**Huston ST. CLAIR, Plaintiff,**

v.

**Volney F. RIGHTER, Robert H. Moore, Jr., and Albridge C. Smith, III, Defendants.**

**Civ. A. No. 65–C–35–R.**

United States District Court
W. D. Virginia,
Roanoke Division.

Jan. 19, 1966.

John S. Battle, Battle, Neal, Harris, Minor & Williams, Richmond, Va., for plaintiff.

Eppa Hunton, IV, John Ritchie, Jr., Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., for defendants.

DALTON, Chief Judge.

This is a libel action wherein plaintiff alleges that the defendants published false and defamatory statements concerning him in a certain letter which they circulated to the stockholders of the Jewell Ridge Coal Corporation. Plaintiff is, and was at the time of the alleged defamation, president and a director of Jewell Ridge, and the letter, in essence, charged him with violation of his fiduciary duties to the Corporation in order to personally benefit himself and members of his family. It is alleged in the complaint that plaintiff is a resident of the Western District of Virginia and that the utterances complained of were published there and elsewhere. It appears, however, that all of the letters were mailed from a point outside Virginia. Plaintiff demands judgment against the defendants, jointly and severally, in the sum of $250,000.00 actual damages and $500,000.00 exemplary damages, plus costs.

Defendants, by counsel, filed a motion to dismiss, alleging:

(1) that the defendants are not residents of Virginia and that Chapter 4.1 of the Code of Virginia does not authorize the exercise of personal jurisdiction over them individually or collectively for any act alleged in the complaint, and therefore service cannot be validly made under the provisions of Va.Code Ann. § 8–81.3 (Supp.1964) ; and

(2) if the statute does so authorize the exercise of personal jurisdiction over the defendants in this case, the statute violates the Due Process clause of the United States Constitution.

The jurisdictional statute involved is Virginia's new "long-arm" statute, Va. Code Ann. § 8–81.2 (Supp. 1964), enacted by the General Assembly on March 31, 1964, which reads, in part:

*When Personal Jurisdiction Over Person May Be Exercised*

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

(1) Transacting any business in this State;

(2) Contracting to supply services or things in this State;

(3) Causing tortious injury by an act or omission in this State;

(4) Causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State;

\* \* \* \* \* \*

The case at bar involves three main questions:

(1) Can jurisdiction be asserted under the terms of the statute itself? In other words, do the acts alleged bring the defendants within the terms of the Virginia "long-arm" statute?

(2) If jurisdiction can be asserted under the statute, would this violate the due process considerations of the United States Constitution?

(3) If the statute does not authorize an assumption of jurisdiction in this case,

may this court take jurisdiction under any other theory?

■ As a preliminary matter, we must consider whether a federal district court may take jurisdiction under a state statute of this type. Although there was previously a conflict in the cases on this point (based mainly on the substance-procedure distinction with respect to the *Erie* doctrine [Erie R. Co. v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188]), the answer now is definitely "yes" under the new Federal Rule 4(e) entitled "Service Upon Party Not Inhabitant of or Found Within State." There is no question but that this court can use the Virginia "long-arm" statute to extend its jurisdiction over nonresident defendants.

The term "long-arm" when used with respect to jurisdictional legislation refers to the enlargement of a state's jurisdictional powers over nonresident defendants. The first of these statutes was enacted by Illinois in 1956, Ill.Ann.Stat. ch. 110 § 17 (Smith-Hurd 1956), and since that time several other states, including Virginia, have passed similar legislation.

It will be noted that Virginia has included two separate paragraphs, (3) and (4), which deal with jurisdiction predicated on a potentially tortious injury which occurs within the State (the statute refers to the causing of a "tortious injury" which, of course, is something of a misnomer, since whether or not the injury was tortious is generally the fact at issue). This sets the Virginia statute apart from the so-called "single-act" long-arm statutes (notably those of Illinois and New York) which state simply that *in personam* jurisdiction may be asserted over a person who commits a "tortious act" within the state. Ill.Ann.Stat., supra; N.Y. CPLR § 302 (1963). Paragraph (4) is considerably more restrictive than paragraph (3), the former requiring that the defendant engage in some persistent course of conduct or derive substantial revenue from goods used or consumed or services rendered within the State for jurisdiction to attach.

Therefore, in interpreting the Virginia statute we must attempt to ascertain the legislative purpose behind the inclusion of the two tortious injury paragraphs.

■ The significant difference between Virginia's statute and the "single-act" statutes is that the General Assembly saw fit to separate the causal act from the resulting injury. In legislation which bases jurisdiction simply on a "tortious act" committed within the state, it is obvious that the act and injury must coincide, as an act cannot be tortious in the absence of injury. Virginia, on the other hand, refers both to the "act or omission" and the *"tortious injury"* resulting therefrom. In both paragraphs the tortious injury occurs within Virginia, but in paragraph (3) the causal act also occurs within the State while in paragraph (4) it occurs outside the State, a fact which, in the minds of the legislators, necessitated the restrictive language appended to the latter paragraph.

■ It seems well settled that in a defamation action, the place of publication (the last event necessary to render the tort-feasor liable) is the place of the wrong. See Dale System, Inc. v. Time, Inc., 116 F.Supp. 527 (D.Conn. 1953); Hartmann v. Time, Inc., 166 F.Supp. 127, 1 A.L.R.2d 370 (3d Cir. 1948); O'Reilly v. Curtis Pub. Co., 31 F.Supp. 364 (D. Mass.1940); Palmisano v. News Syndicate Co., 130 F.Supp. 17 (S.D.N.Y.1955); Restatement, Conflicts of Laws § 377, para. 5 (1934). There is little doubt, then, that the facts of this case would fall within the provisions of a "single-act" statute such as the one enacted in Illinois, as the injury (*tortious* "act") occurred in Virginia where the alleged libel was published. As an example, take the case of Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). There an Illinois plaintiff brought an action for breach of warranty (which would come in under the "tortious act" section in Illinois) against an Ohio valve manufacturer for a defective valve. The Ohio manufacturer had shipped the valve to a Pennsylvania corporation which had in-

stalled it in a water heater. The heater was shipped to Illinois where plaintiff purchased it. Thereafter, the heater exploded, causing plaintiff serious injury. The Illinois Supreme Court sustained the exercise of personal jurisdiction over the Ohio valve manufacturer, saying that the failure of the defective valve, the last event necessary to make the manufacturer liable for a tortious act, occurred in Illinois. In Gray, the actual "act" which precipitated the injury was the manufacture of the defective valve, which occurred outside Illinois. This was not a "tortious act," however, until the hot water heater exploded and caused injury to the plaintiff, and this occurred in Illinois. It is interesting to compare Gray with the earlier case of Trippe Mfg. Co. v. Spencer Gifts, Inc., 270 F.2d 821 (7th Cir. 1959). This was a decision under the Illinois "long-arm" statute by the Court of Appeals for the Seventh Circuit, which, at that time, had no controlling state precedent to rely on. In Trippe there was a New Jersey mail-order corporation which was not licensed to do business in Illinois but had mailed catalogs, containing allegedly false statements, into the state. The court decided that the defendant had performed no act within the state, tortious or otherwise. It seems safe to say that after Gray the Trippe case would be decided differently in Illinois, but it is believed that the Trippe result would be reached in a state, such as Virginia, where the statute requires a truly separate inquiry into the place of the act and the place of the injury.

■ In the instant case, the alleged tortious injury occurred upon the publication of the alleged libel within Virginia, but this was caused by the *act* of writing and mailing the letters *outside* Virginia. Plaintiff, therefore, must predicate jurisdiction upon paragraph (4), and this court must hold that the acts alleged in this case do not fall within the terms of the statute, as there is no evidence of any persistent course used by the Virginia General Assembly of conduct or derivation of revenue on the part of the defendants. The language must be interpreted with relation to the statute as a whole, and if the court were to hold that plaintiff could use paragraph (3) to obtain jurisdiction (a holding that the act occurred in Virginia), the necessity for paragraph (4) would be completely obviated, as every set of facts which give rise to tortious injury could be brought within the terms of paragraph (3). We would in effect be assimilating the Virginia statute to the single-act statutes of other states. Obviously, there is a purpose for paragraph (4) or the legislature would not have included it. Most probably, there was some concern over the constitutionality of single-act provisions, and to "enact" a single-act statute by judicial legislation would be to blatently disregard the intent of the General Assembly. This, however, is what this court would be doing if it held that the act occurred inside Virginia upon the publication of the libel. Under such an interpretation the act and the injury would coincide and thus render the act a tortious one. It is believed that the legislature purposely omitted the adjective "tortious" when referring to the act or omission and included it with reference to the resulting injury in order to make certain that a single-act interpretation would be precluded.

This result will follow regardless of other libel decisions (whether construing a "long-arm" statute or not) which might lend credence to an argument that the "act" occurred within Virginia, as we must interpret this terminology in the light of its use in the Virginia statute and only in this light.

For the reasons given, this court concludes that the acts alleged in this complaint are not sufficient to bring the defendants within the terms of Chapter 4.1 of the Code of Virginia. It follows, then, that a consideration of the constitutionality of section 8-81.2 will not be necessary. It does not follow, however, that the motion to dismiss must be granted, as there is another basis upon which jurisdiction can attach in this case.

Any consideration of jurisdiction such as the one at bar necessarily involves two

elements which have already been mentioned, i. e., (1) can jurisdiction be taken under the statute involved, and, if so, (2) is that statute constitutional? There has been a trend of constant expansion of *in personam* jurisdiction over nonresident defendants since the Supreme Court's decision in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and especially since the expansion of the theory of International Shoe in 1957 in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In conjunction with these two decisions, the earlier cases of Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927), and Henry L. Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097 (1935), should be noted. Using the criteria set down by the Supreme Court as a starting point, several states have significantly expanded the scope of their *in personam* jurisdiction over nonresident individuals, the trend seeming to be to push state jurisdiction to the outer limits of due process. See, for example: Shealy v. Challenger Mfg. Co., 304 F.2d 102 (4th Cir. 1962); Green v. Robertshaw-Fulton Controls Co., 204 F.Supp. 117 (S.D.Ind.1962); Johns v. Bay State Abrasive Products Co., 89 F.Supp. 654 (D.Md.1950); Gray v. American Radiator & Standard Sanitary Corp., supra; Nelson v. Miller, 11 Ill.2d 378, 143 N.E. 2d 673 (1957); Adamek v. Michigan Door Co., 260 Minn. 54, 108 N.W.2d 607 (1961); Shepard v. Rheem Mfg. Co., 249 N.C. 454, 106 S.E.2d 704 (1959); Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193 (1951). See also the cases cited in Note, 51 Va.L.Rev. 719 (1965). As this is done, the state jurisdictional question and the constitutional question tend more and more to merge into a single consideration: due process.

▮▮▮ The jurisdiction of a court is purely and simply a question of *power*— the power to create or affect legal interests which will be recognized as valid elsewhere. A limit is put on this power by the due process considerations of the United States Constitution, and with respect to jurisdiction over the person, the question boils down to whether this court is in a position to subject these individuals to its authority without violating the requirements of due process of law. A "long-arm statute", therefore, is merely legislative approval for the exercise by the courts in that state of their inherent jurisdictional power *at least* to the limits set out in the statute. It goes without saying that the mere fact that the legislature has passed a statute does not permit an extension of jurisdiction beyond due process limits even if authorized by the legislation. Conversely, if the limits of state jurisdiction as set out in the statute fall well within the scope of due process, this does not *restrict* the courts and prohibit them from extending their jurisdiction to the limits of due process even if such an assumption of latent power is not expressly authorized by the statute. This necessarily follows from the fact that jurisdiction is a question of power which is ultimately defined by due process and not by state legislation. (The court expresses no opinion with regard to the situation where a legislature has expressly stated that the courts of that state are not to exercise jurisdiction beyond the limits defined in the statute, as that is not the case here.)

If we can imagine the outer limit of due process as the circumference of a circle and the outer limit of jurisdiction which has been authorized by a state statute as a much smaller concentric circle within the larger circle, then there is an area between the circumferences of the inner and outer circles where the state has not been expressly *authorized* to assert jurisdiction but which, nevertheless, is a part of the state's inherent jurisdictional *power*. So bringing this general discussion to bear on the case at hand, even though section 8–81.2 of the Code of Virginia has not in words sanctioned an assumption of jurisdiction in this case, it is within this court's power to assert jurisdiction over these defendants providing that this would not run afoul of the United States Constitution.

To assume jurisdiction in this case would have the same effect, from a constitutional standpoint, as the taking of jurisdiction under one of the single-act "long-arm" statutes mentioned previously. The fact that the legislature of Illinois, for instance, has passed a single-act statute gives the courts of that state no more power to assert jurisdiction, relative to due process limitations, than the courts of Virginia have. The leading case under the Illinois statute is Gray v. American Radiator & Standard Sanitary Corp., supra, and the case of Nixon v. Cohn, 62 Wash.2d 987, 385 P.2d 305 (1963) follows Gray. Note also Anderson v. Penncraft Tool Co., 200 F.Supp. 145 (N.D.Ill.1962); McMahon v. Boeing Airplane Co., 199 F.Supp. 908 (N.D.Ill. 1961); and Rensing v. Turner Aviation Corp., 166 F.Supp. 790 (N.D.Ill.1958).

Although the Supreme Court has not passed directly single-act provisions which relate to tortious injury, it has left little doubt that such provisions will be held constitutional. The McGee case, supra, involved a nonresident insurance company which mailed one reinsurance certificate into California, its only contract with that state. The Supreme Court held that California courts could constitutionally take jurisdiction under a statute which subjected anyone who insured a risk within the state to *in personam* jurisdiction. It is significant to note that in deciding McGee, the Supreme Court cited Smyth v. Twin State Improvement Co., supra, and S. Howes Co. v. W. P. Milling Co., 277 P.2d 655 (Okl. 1954), for the proposition that the Due Process clause does not preclude the exercise of personal jurisdiction provided there are "substantial connections with the state." Both these cases involved an isolated or single-act transaction; nevertheless, the nonresident defendants were held to have had sufficient contacts with the forum state. The court also referred to Hess v. Pawloski, supra, and Henry L. Doherty & Co. v. Goodman, supra, in saying that it is sufficient for due process purposes that the suit is based on a con-

tract which had a substantial connection with the state. Hess was the landmark decision upholding the nonresident motorist statutes (in effect, a narrow form of a modern single-act statute) and Doherty subjected a nonresident individual whose only contact with the state was that he had established an office for dealing in securities to *in personam* jurisdiction. For some time, it was thought in some circles that these two cases could not be read beyond their facts and that jurisdiction was upheld only because of the special and extraordinary interest that a state had in regulating the securities business and the use of the highways of the state. The nonresident motorist cases, it was said, were based on the "implied consent" of anyone using the highways to be sued in the courts of that state. The McGee case would seem to be at least a preliminary indication that "implied consent" and "special interest" were not the true bases of these two decisions. The July 13, 1965 proceeding in Rosenblatt v. American Cyanamid Co., 86 S.Ct. 1, 15 L.Ed.2d 39 (1965), is particularly helpful. This was a proceeding before Mr. Justice Goldberg on an application for a stay of execution of a judgment pending appeal from a decision of the New York Court of Appeals sustaining the trial court's denial of defendant's pre-trial motion to dismiss the complaint for want of personal jurisdiction. Plaintiff had filed a complaint against defendant in the New York courts, based upon an alleged conspiracy to convert trade secrets, seeking injunctive relief and damages. Service was made upon the defendant, a United States citizen, in Rome, Italy, under the New York "long-arm" statute which provides for *in personam* jurisdiction on the basis of commission of a "tortious act" within the state. The question for decision was whether plenary review by the United States Supreme Court on defendant's claim that the statute as applied to him was unconstitutional was likely; if so, a stay should be granted. Mr. Justice Goldberg concluded that the constitu-

tional argument was insubstantial. He said:

> The logic of this Court's decisions in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, supports the validity of state "long arm" statutes such as the one involved here which base *in personam* jurisdiction upon commission of a "tortious act" in the forum State. Since those decisions a large number of States have enacted statutes similar to the one here. In cases under these statutes in state and federal courts, jurisdiction on the basis of a single tort has been uniformly upheld: [citing Smyth v. Twin State Improvement Corp., supra; Nelson v. Miller, supra; Painter v. Home Finance Co., 245 N.C. 576, 96 S.E.2d 731 (1957); Hutchinson v. Boyd & Sons Press Sales, Inc., 188 F.Supp. 876 (D.C.D.Minn.1960).]

> "Indeed, the constitutionality of this assertion of jurisdiction, today, could only be doubted by those determined to oppose the clear trend of the decisions. This situation is exactly that of the nonresident-motorist statutes, which were long ago upheld, except that the highways are not directly involved. It is now clear, if it was ever in doubt, that the nonresident-motorist cases were not really based on 'consent' but on the interest of the forum State and the fairness of trial there to the defendant." Currie, The Growth of the Long Arm, 1963 U.Ill.Law Forum 515, 540.

Mr. Justice Goldberg further noted that the Court in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), held that what was essential in each case is "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." 235 U.S. at 253, 78 S.Ct. at 1240. Currie, he said, has interpreted and generalized the Hanson test as a requirement "that the defendant must have taken voluntary action calculated to have an effect in the forum state." Currie, op. cit., at 549. It is clear from Mr. Justice Goldberg's discussion that the principles apply to individuals as well as to corporations.

■ . The assumption of jurisdiction in this case is not merely a bald exercise of power, as this court believes that Virginia has a great interest in, and significant contacts with this situation, making it reasonable to assert personal jurisdiction over these defendants. Virginia, as the forum state and place of the injury, can quite validly desire to fix the measure of protection to which each person injured within the state is entitled against his fellows and determine whether the damage was wrongfully inflicted, thus giving rise to a cause of action in tort. This interest is rendered even more substantial by the fact that the plaintiff in this case is a domiciliary of Virginia.

Moreover, the court does not believe it would be unfair to subject the defendants to *in personam* jurisdiction in this case, as they purposefully mailed letters into the state whose purpose, presumably, was to encourage other stockholders of Jewell Ridge Coal Corporation to join in a suit against the plaintiff. It was not merely fortuitous, then, that the injury (if there is found to be one at the trial on the merits) occurred in Virginia; rather, it was a clear example of "voluntary action" taken by the defendants which was "calculated to have an effect in the forum state." For an analogous case, see the conflict of laws decision of Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158 (1933). There the defendant, a resident of New Jersey, lent his car to another and gave him permission to drive it into New York. The borrower did drive into New York and injured plaintiff, a domiciliary of that state, who brought this action in New Jersey for the injuries received. The applicable New York statute held a car owner liable

for the negligence of anyone using his car on his business or with his permission, express or implied. In deciding to apply the law of New York, the Supreme Court said that the defendant had given his permission for the car to be driven into New York and therefore subjected himself to the legal consequences imposed by that state.

A significant contact, which has been alluded to some extent above, is the fact that under conflict of laws rules, the law of Virginia could, and probably would, be applied in this case regardless of where the suit was brought. There is a general rule (if there can be said to be any "rules" in this area of conflicts) that the law of the place of injury governs the right of action for a tort, regardless of where the act or omission takes place. Northern Pac. R. Co. v. Babcock, 154 U.S. 190, 197, 14 S.Ct. 978, 38 L.Ed. 958 (1894); Jarrett v. Wabash Ry., 57 F.2d 669, 671 (2d Cir. 1932); Alabama Great Southern R. R. v. Carroll, 97 Ala. 126, 11 So. 803, 18 L.R.A. 433 (1892); Restatement, Conflict of Laws § 412 (1934); 11 Am.Jur. Conflict of Laws § 182.

It is possible that the law is moving more and more toward the idea that choice of law is jurisdictional, and that the fact that the law of the place is applicable provides the minimum contact necessary to permit the state to exercise *in personam* jurisdiction under the Due Process clause of the Fourteenth Amendment. See Comment, 19 Wash. & Lee L.Rev. 271 (1962). However, this court would not have to go that far to assume jurisdiction in this case, since subjecting these defendants to *in personam* jurisdiction would be constitutionally no more obnoxious than asserting jurisdiction under a single-act long-arm statute, and from the indications already discussed, this court has little doubt that the Supreme Court will ultimately hold such statutes constitutional.

For the reasons stated above, the defendants' motion to dismiss for lack of personal jurisdiction will be overruled. An order will be entered to this effect.