**Melvin F. BEATY, to his own use and to the use of United States Fidelity and Guaranty Company, a body corporate, Appellants,**

v.

**M. S. STEEL COMPANY, Inc., a body corporate, Appellee.**

**Raymond A. GRAINGER, to his own use and to the use of United States Fidelity and Guaranty Company, a body corporate, Appellants,**

v.

**M. S. STEEL COMPANY, Inc., a body corporate, Appellee.**

Nos. 12176, 12177.

United States Court of Appeals Fourth Circuit.

Argued June 20, 1968.

Decided Aug. 23, 1968.

Certiorari Denied Jan. 20, 1969.

See 89 S.Ct. 686.

John P. Wade and William H. Hicks, Baltimore, Md. (Sidney Blum, Baltimore, Md., on brief) for appellants.

Hamilton O'Dunne, Baltimore, Md. (Patrick A. O'Doherty, Baltimore, Md., on brief) for appellee.

Before SOBELOFF, WINTER and BUTZNER, Circuit Judges.

SOBELOFF, Circuit Judge:

The question to be decided in this diversity action brought by two injured Maryland iron workers is whether a federal district court, sitting in Maryland, may in the circumstances of this case entertain in personam jurisdiction over the defendant, an Alabama steel manufacturer. The District Court dismissed for want of jurisdiction, and we affirm on that basis.

Plaintiffs, who were injured while working on bar joists at the Bethlehem Steel Company, Sparrows Point, Maryland, allege that their injuries resulted from defects in the joists, which had been negligently manufactured and welded at defendant's plant in Fort Payne, Alabama. The purportedly defective joists were ordered over the telephone by a jobber in Boston, Massachusetts, and were shipped pre-paid from Alabama to a consignee in Maryland.

Defendant's uncontradicted affidavit states that it is a corporation organized and operating under the laws of Alabama, that it is not licensed to do business in Maryland, and that, except for this one shipment into the state, it has not transacted any business there. Although the plaintiffs alleged in the jurisdictional statement of their complaint that the defendant is "doing business" in Maryland, no evidence of any kind was offered in support of this assertion.[1] Thus, we must assume, as did the District Court, that the shipment of allegedly defective bar joists was defendant's

1. At one point plaintiffs requested permission to file counter affidavits showing defendant's multiple contacts with the State of Maryland. Although the request was granted, no such affidavits were filed; instead plaintiffs submitted a memorandum of law in support of the contention that the single contact was jurisdictionally sufficient.

single contact with the State of Maryland.

While plaintiffs-appellants urge upon us questions of constitutional dimension, we do not reach these issue unless a federal statute or a state statute or rule of court authorizes an assertion of jurisdiction over this out-of-state defendant. Rule 4(e) Fed.R.Civ.Proc. No statute of the United States empowers the District Court to exercise personal jurisdiction over the defendant on the facts of this case. Thus, our inquiry must be directed to the statutes and rules of Maryland, and a plain reading of that state's long-arm statute [2] reveals that the legislature has expressly declined to permit its courts to exercise jurisdiction in this situation.

Modeled upon, but more restrictive than, the Uniform Interstate and International Procedure Act, 9B U.L.A. 307–15 (1966 ed.), the Maryland statute empowers a court to exercise personal jurisdiction over a person or corporation:

> "causing tortious injury in this State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in this State or derives substantial revenue from food or services used or consumed in this State * * *."

Art. 75 § 96(a) (4) Maryland Code Ann. (Supp.1965).

This language was drafted several years after Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), upon which plaintiffs here rely heavily. In *Gray*, the Illinois court interpreted that state's long-arm statute to cover a non-resident defendant who had no connection with Illinois except that it had acted negligently out of state, causing injury in the state. The Illinois statute provided that in personam jurisdiction may be asserted over any person who "commits a tortious act" within the state. It was with knowledge of the *Gray* resolution of the ambiguity inherent in the phrase "tortious act" that the draftsmen of the Uniform Act, and derivatively the Maryland legislature, explicitly differentiated between in-state and out-of-state conduct. Thus both the Uniform Act and the Maryland law provide in subsection (a) (3) that a person may be subject to in personam jurisdiction if he "caus[es] tortious injury in this State by an act or omission in this State." This is followed by the previously quoted section dealing with out-of-state conduct causing injury in the state and requiring for the exercise of jurisdiction some other reasonable connection between the state and the defendant besides the single out-of-state act. This formula was presumably devised to obviate any possible due process objections.[3] Since the Illinois stat-

---

2. The legislative purpose of the 1964 Maryland long-arm statute was a comprehensive expansion of the State's judicial jurisdiction. See Auerbach, The "Long Arm" Comes to Maryland, 26 Md.L.Rev. 13, 30 (1966). It follows then that at least as to causes of action arising from the activities enumerated in the statute, if a defendant is not covered by the long-arm statute, he will not be covered by any prior state enactment. Cf. Art. 23 § 92 Maryland Code Ann. (1957). We therefore need focus our attention only on the long-arm statute itself, which speaks specifically to the problem at hand.

3. For example, in describing the mental operations of the draftsmen of the Wisconsin long-arm statute, upon which the Uniform Act was in large part based, Professor Foster of Wisconsin Law School recalled:

> "To avoid abuse or possible unjust application of the statute, we frequently backed away in our drafting from what we thought were the outer limits permissible under the Fourteenth Amendment. * * * In the product liability situation, to cite an example, we declined to use a single-act formulation. Thus, a defendant charged with causing an injury in Wisconsin from an act done elsewhere is amenable only if in addition he engaged in other Wisconsin activities or could reasonably foresee that goods he manufactured for general public use were likely to reach Wisconsin in their ordinary mode of distribution." Foster, Judicial Economy: Fairness and Convenience of Place of Trial: Long-Arm Jurisdiction in District Courts, An Address to the Thirty-eighth Judicial Conference of the Fourth Circuit, 1968.

ute did not require an independent connection between defendant and the state and since that is the crucial element in this case, it is abundantly clear that plaintiffs' reliance upon the *Gray* decision is altogether misplaced.

In the case at bar, the defendant lacks the statutorily prescribed independent connection with the state upon which the Maryland legislature has premised jurisdiction. The defendant does not regularly do or solicit business in Maryland, nor does it engage in any other persistent course of conduct there. Whether the "substantial revenue" provision could be satisfied by this single transaction is irrelevant since the funds were for steel joists not for "food or services used or consumed in this State."

For reasons known best to its legislators, Maryland restrictively modified the Uniform Act which would permit the exercise of jurisdiction over an out-of-state tortfeasor who "derives substantial revenue from *goods used or consumed* or services rendered in this state." (Emphasis supplied.) That Maryland's change from all goods to foods alone was not inadvertent is demonstrated by a similar alteration in another section of the Act. Where the Uniform Act would exert jurisdiction over an out-of-stater "contracting to supply services or things in this State," Maryland's law deletes the words "or things" and makes the section applicable only to persons "contracting to supply services in this State." Art. 75 § 96(a) (2) Maryland Code Ann. (Supp. 1965). As the author of the definitive study of the Maryland long-arm statute observes,

> "Because of the omission, the Maryland resident who is injured by defective merchandise shipped into the state by a foreign manufacturer or who suffers damages because of the failure of such manufacturer to carry out his contractual obligation may be deprived of the opportunity of using a local forum." Auerbach, The "Long Arm" Comes to Maryland, 26 Maryland Law Review 13, 18 (1966).

As earlier noted, whether or not the local resident is so deprived depends on the existence of a substantial or continuing relationship between the defendant and the state. Since in this case the requisite relationship is absent, Maryland courts have no in personam jurisdiction over the present defendant.

Rather than dispute the District Court's clearly correct interpretation of the Maryland long-arm statute, the plaintiffs put their reliance on St. Clair v. Righter, 250 F.Supp. 148 (W.D.Va.1966), a case that was not appealed. There, a defamation originating beyond the borders of Virginia was mailed into that state by a defendant having no other connection with the state. Although Virginia has a long-arm statute identical to the Uniform Act., the District Court held that it could properly subject defendant to in personam jurisdiction. After specifically recognizing that the defendant did not fall within any provision of the long-arm statute, the court reasoned that since due process would permit such an exercise of power, the court sua sponte could exercise jurisdiction over the defendant. The court stated:

> "If we can imagine the outer limit of due process as the circumference of a circle and the outer limit of jurisdiction which has been authorized by a state statute as a much smaller concentric circle, then there is an area between the circumferences of the inner and outer circles where the state has not been expressly *authorized* to assert jurisdiction but which, nevertheless, is a part of the state's inherent jurisdictional power. So * * * [even though the long-arm statute] has not in words sanctioned an assumption of jurisdiction in this case, it is within this court's power to assert jurisdiction over these defendants providing that this would not run afoul of the United States Constitution."

From the premise that the Supreme Court would uphold as not constitutionally invalid authorization for the exercise of jurisdiction over a defendant who acts

tortiously out of state and causes injury in the state, the District Court concluded that it should subject the defendant to jurisdiction. The illustration of the two concentric circles is apt, but the conclusion undertakes to make the two circles identical. In short, the court rendered nugatory the long-arm statute, and ignoring limitations embodied in the statute, asserted jurisdiction to the full extent of the due process clause of the Fourteenth Amendment. In so doing, the District Court misconceived the role of the due process clause and misinterpreted the decisions of the Supreme Court dealing with a state's power to exercise jurisdiction over non-residents.

In every case cited by the District Court for the Western District of Virginia in St. Clair v. Righter, supra, for the proposition that it could assert jurisdiction over the defendant despite the absence of empowering state legislation, there was in fact a statute specifically authorizing the state court's exercise of jurisdiction. Thus, in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223 (1957), a California statute which subjected foreign corporations to suit in California on insurance contracts with residents of that state was held constitutionally sound. Similarly, Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927), and Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097 (1935), involved the constitutionality of state statutes, either on their face or as applied.

In these cases, the due process clause was applied as a limit on the state's power and not a mandate for the exercise of that power, as the District Court impliedly suggests. In Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 441, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the Supreme Court branded as without substance the suggestion that federal due process *compels* the state to open its courts to suits against foreign corporations on causes of action arising either within or without the state. Due process comes into play only after a state has attempted through legislation to subject a non-resident to process. As the Supreme Court said in Missouri Pac. R.R. Co. v. Clarendon Boat Oar Co., 257 U.S. 533, 535, 42 S.Ct. 210, 211, 66 L.Ed. 354 (1922), "Provisions for making foreign corporations subject to service in the State is a matter of *legislative discretion,* and a failure to provide for such service is not a denial of due process." (Emphasis added.) Similarly in Arrowsmith v. United Press International, 320 F.2d 219, 222, 6 A.L.R.3d 1072 (2d Cir. 1963), the Second Circuit stated: "This conclusion, that a federal district court will not assert jurisdiction over a foreign corporation in an ordinary diversity case unless that would be done by the state court *under constitutionally valid state legislation* in the state where the court sits, has been reached in almost every circuit that has considered the issue." (Emphasis added.)[4] See Bowman v. Curt G. Joa, Inc., 361 F.2d 706 (4th Cir. 1966); Westcott-Alexander, Inc. v. Dailey, 264 F.2d 853 (4th Cir. 1959).

Thus, it is clear that at least where the legislature has acted, even though the statute may not go to the limits of due process, the courts of a state may not go further and assert jurisdiction over persons not embraced within that legislation. Whether the Maryland legislature could, consonant with due process, have gone further than it did and subjected this defendant to jurisdiction is not the issue before us. We hold only that a trial court may not exercise more jurisdiction than the statute permits.

---

4. Of course, we recognize, as did Judge Friendly, author of *Arrowsmith,* that the holding of that case "would not prevent Congress or its rule-making delegate from authorizing a district court to assume jurisdiction over a foreign corporation in an ordinary diversity case although a state court would not." *Arrowsmith,* supra at 226. But here too there must be some legislative authorization for the court to act; the due process clause alone does not affirmatively confer jurisdiction upon the District Court.

Since we are of the view that the District Court in the order appealed from has correctly interpreted the Maryland long-arm statute as excluding his defendant from its coverage, the judgment below is

Affirmed.