**Helen L. SEYMOUR, Executrix and Ancillary Executrix of the Will of Maurice R. Seymour**

**v.**

**PARKE, DAVIS & COMPANY.**

**Civ. A. No. 2881.**

United States District Court
D. New Hampshire.

Jan. 22, 1969.

E. Paul Kelly and John J. Sheehan, Sheehan, Phinney, Bass & Green, Manchester, N. H., for plaintiff.

Martin L. Gross, Sulloway, Hollis, Godfrey & Coden, Concord, N. H., for defendant.

## MEMORANDUM AND ORDER

BOWNES, District Judge.

This is an action for personal injury and wrongful death allegedly caused by ingestion of a certain drug manufactured by the defendant. The plaintiff is a resident and citizen of the Commonwealth of Massachusetts, acting as ancillary executrix and on behalf of her decedent who was also a Massachusetts resident and citizen at all times pertinent to this action up to and at the time of his death. The defendant is a Michigan corporation which markets its products throughout the country, including the State of New Hampshire. The drug taken by the decedent was prescribed by a Massachusetts physician, purchased in a Massachusetts retail drug store, and used by the decedent in Massachusetts. In brief, except for the initiation of this action, all of the facts on which the action is based are firmly anchored in the Bay State.

Service was made upon the defendant under the provisions of the New Hampshire "long-arm" statute, pursuant to Federal Rule 4(d) (7). The "long-arm" statute provides, in substance, that service of process may be made upon the Secretary of State as the constructive agent of a foreign corporation which transacts business within the state but has not appointed its own registered agent for service of process. N.H.Rev. Stat.Ann., ch. 300:11 and 300:12.[1] It is clear that the sole purpose for bringing this action in the District Court for the District of New Hampshire is to circumvent the Massachusetts statutes of limitations relative to wrongful death and personal injury, with the hope that the longer New Hampshire limitation period would, under some theory of conflict of laws, be applied by this Court.[2]

The defendant has moved to dismiss on several grounds, primarily for reason of failure of jurisdiction, alleging that the New Hampshire "long-arm" statute violates due process as utilized in this instance because "there is no rational nexus between material elements of the case and the State [of New Hampshire] * * *." This Court is thus faced with a unique problem of jurisdiction brought about solely because of the difference between the statutes of limitations of the neighboring states of Massachusetts and New Hampshire. We are asked to define the due process limitations upon a state's exercise of *in personam* jurisdiction over foreign corporations where both litigants are non-residents of the

---

1. N.H.Rev.Stat.Ann. ch. 300:11 [Service of Process upon foreign corporations] provides in pertinent part:

 * * * * *

 (c) * * * Whenever any foreign corporation * * * transacting business in this state shall fail to appoint or maintain in this state a registered agent upon whom service of legal process * * * may be had, * * * then and in every such case the secretary of state shall be and hereby is irrevocably authorized as the agent and representative of such foreign corporation to accept service of any process * * * required or permitted by law to be served upon such corporation. (Chapter 300:12 merely describes the mechanics by which service of process is actually made upon the secretary of state under the chapter, and describes the secretary's mandatory duty thereupon.)

2. At a hearing on the motion, plaintiff's counsel honestly and realistically conceded the reason for initiation of the action here. The Massachusetts "wrongful death act" in effect at the time of the decedent's death placed a one year limitation period on such actions. Mass. Gen.Laws ch. 229, § 2 [subsequently amended, Stats.1967, ch. 666, lengthening that period to two years]. The statute of limitations for personal injury actions is two years in Massachusetts. Mass. Gen.Laws ch. 260, § 2A. The New Hampshire limitation periods for similar actions are two and six years respectively. N.H.Rev.Stat.Ann. ch. 508:4; ch. 556:11.

forum state and have no particular contacts or ties with it.

■ The amenability of a foreign corporation to suit in a federal court in a diversity action, under Federal Rule 4(d) (7), is determined in accordance with the law of the forum state. Federal law becomes controlling only if the local statute purports to assert jurisdiction beyond the due process boundaries set by the fourteenth amendment. See Arrowsmith v. United Press International, 320 F.2d 219, 6 A.L.R.3d 1072 (2nd Cir. 1963); Sanders Associates, Inc. v. Galion Iron Works & Mfg. Co., 304 F.2d 915 (1st Cir. 1962); Pulson v. American Rolling Mill Co., 170 F.2d 193 (1st Cir. 1948).

■ The New Hampshire "long-arm" statute has been the subject of several recent decisions, both state and federal,[3] and by explicit language of the New Hampshire Supreme Court, that statute was construed to extend to the outer periphery of due process limits. Roy v. North American Newspaper Alliance, Inc., 106 N.H. 92, 205 A.2d 844 (1964). However, the New Hampshire court has never been called upon to consider the effect or limits of that statute under the circumstances that are now before this court, i. e., where the plaintiff and defendant are both non-residents;[4] but the New Hampshire Supreme Court made it clear in the Roy case that the New Hampshire "long-arm" statute would reach as far as due process would allow *to protect the interests of its own citizens.* 106 N.H. 92 at 97, 205 A.2d 844.[5] Such is not the use of the statute that is contested in this case. Even though the New Hampshire statute is intended to reach as far as allowed by due process, I rule that under the facts of this case the lack of *any* New Hampshire interest in this litigation renders service under N.H.Rev.Stat.Ann. 300:11 and 300:12 defective for due process reasons, and compels dismissal for lack of jurisdiction of this court. In so ruling I wish to make it explicitly clear that if either this plaintiff were, or her decedent had been a bona fide resident of

3. Roy v. North American Newspaper Alliance, 106 N.H. 92, 205 A.2d 844 (1964); Benson v. Brattleboro Retreat, 103 N.H. 28 (1960); LaBonte v. American Mercury Magazine, 98 N.H. 163, 96 A.2d 200, 38 A.L.R.2d 742 (1953); Sanders Associates, Inc. v. Galion Iron Works & Mfg. Co., 203 F.Supp. 522 (D.C.N.H.1961), rev'd on other grounds, 304 F.2d 915 (1st Cir. 1962); W. H. Elliott & Sons Co. v. Nuodex Products Co., 243 F.2d 116, cert. denied 355 U.S. 823, 78 S.Ct. 30, 2 L.Ed.2d 38 (1957); W. H. Elliott & Sons Co. v. F. & F. King & Co., 144 F.Supp. 401 (D.C.N.H.1956), vacated on other grounds, W. H. Elliott & Sons Co. v. Nuodex Products Co., 243 F.2d 116, cert. denied 355 U.S. 823, 78 S.Ct. 30, 2 L.Ed.2d 38 (1957).

4. The circumstances in the cases decided up to the Roy case in 1964 were primarily concerned with the nature and kind of a defendant's *local* activities which would subject him to jurisdiction. In this regard see Sanders Associates, Inc., supra, 304 F.2d at 920.

5. A basic principle of reasonableness *is* the foundation of any exercise of jurisdiction by a state. [Citation omitted.] In the present case this state has an interest in protecting its citizens against defamation. [Citation omitted.] The plaintiff is not "forum shopping" but seeks redress in the community and state where he lives and works. Cf. Arrowsmith v. United Press International, 320 F.2d 219, 221 (2d Cir. 1963). * * * While not conclusive, the equities and convenience of trial designate this state as a just and fair forum because its law applies and because the crucial witnesses will for the most part be from within this state. [citation omitted.] * * *

* * * We recognize that "Hanson v. Denckla, [357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283] which teaches that, although the door of non-resident jurisdiction has been opened wider by International Shoe [Co. v. State of Wash., etc.] [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 85] and McGee v. International Life Ins. Co., [355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223,] it has not been removed from its hinges * * *." Dooly v. Payne, 326 F.2d 941, 943 (5th Cir. 1964). Roy v. North American Newspaper Alliance, 106 N.H. 92 at 97–98, 205 A.2d at 847.

New Hampshire, there would be no such due process barrier.

It would indeed be less than candid to fail to acknowledge that this ruling may be one of first impression. Diligent search by the Court for recent cases considering the precise question now before us has been unavailing.[6] Nevertheless, I feel that this ruling is compelled by reason and logic, justified under federal law, uncontradicted by the opinions of the First Circuit and the Supreme Court, and supported, at least in part, by recent decisions of the Fifth, Sixth, Eighth and Ninth Circuits.[7]

Historically, the primary function of diversity jurisdiction was to provide a "neutral" forum for the out-of-state litigant who feared that the state court might be unduly, if unconsciously and articulately, solicitous of its own citizens' interests. Caso v. Lafayette Radio Electronics Corp., 370 F.2d 707 (1st Cir. 1966). And in this light, so that substantive rights would not be substituted or violated, the progeny of the *Erie* doctrine developed and refined the rules as to the law to be applied in the federal court, continually retreating from "con-

clusionary labels or mechanical solutions * * * [and increasingly emphasizing] consideration and accommodation of the basic state and federal policy goals involved." Allstate Insurance Co. v. Charneski, 286 F.2d 238, 243 (7th Cir. 1960). Fairness was the desired objective—"forum shopping" was condemned; and thus the local forum's conflict of laws rules were included within the ambit of "substantive" or non-federal law.[8] To allow a non-resident plaintiff to proceed against a non-resident defendant, where neither party has any particular contacts with the forum state, merely to circumvent an unfavorable statute of limitations would inevitably lead to a thorough and complete perversion of fundamental principles of diversity jurisdiction, comity, and fairness—a result as illogical as it is unreasonable, and totally lacking in fairness.

The Constitution which was ordained "to form a more perfect union," contemplates that the boundaries between the states shall have continued significance for some purposes though not for all. If one State may, without violation of the due process clause,

---

6. There is extensive case material evaluating instances of states' exercise of extraterritorial jurisdiction, but these cases have, since 1945, primarily dealt with specific fact situations examined in the light of the "fair play and substantial justice" standard propounded by the International Shoe decision [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)]. See Annot., 6 A.L.R.3rd 1103 (1966).

7. Representative of those cases are Curtis Publishing Co. v. Birdsong, 360 F.2d 344 (5th Cir. 1966); Curtis Publishing Co. v. Golino, 383 F.2d 586 (5th Cir. 1967); Phillips v. Hooker Chemical Corp., 375 F.2d 189 (5th Cir. 1967); Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968); Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir. 1965); Taylor v. Portland Paramount Corp., 383 F.2d 634 (9th Cir. 1967); Dragor Shipping Corp. v. Union Tank Car Corp., 361 F.2d 43 (9th Cir. 1966). See also Hawaii Credit Card Corp. v. Continental Credit Card Corp., 290 F.Supp. 848 (D.Hawaii 1968).

In Beaty v. M. S. Steel Co., 401 F.2d 157 (4th Cir. 1968), Circuit Judge Sobeloff, in commenting upon the Maryland "long-arm" statute, noted the inclusion in that law (Art. 75 § 96(a) (4), Maryland Code Ann. (Supp. 1965)) of explicit contact requirements limiting that state's power to exercise personal jurisdiction over a person or corporation and suggested that they were "presumably devised to obviate any possible due process objections." 401 F.2d 157 at 159. See also Note 3. Perhaps Judge Sobeloff's comments are a harbinger of an impending Third Circuit delimitation of this particular due process consideration.

8. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477 (1941). See also Note "Applicability of State Conflicts Rules When Issues of State Law Arise in Federal Question Cases," 68 Harv.L.Rev. 1212 (1955); Freund, "Chief Justice Stone and the Conflict of Laws," 59 Harv.L. Rev. 1210, 1236, note (1946).

extend the authority of its courts beyond its boundaries over persons and situations not sufficiently related to that State, the separate identity of the States will be reduced to a mere fiction. Individual states could undertake at the expense of other States to enlarge the sphere of their authority to nationwide dimensions. It requires no flight of fancy to foresee the resulting maze of lawsuits adjudicating the interests of persons having only the faintest and most remote links with the State exercising authority. If the due process clause is not effective to restrain such extensions of local power, then the federal system is likely to be transformed into something very different from anything we have known. Curtis Publishing Co. v. Birdsong, 360 F.2d 344, 347–348 (5th Cir. 1966), quoting Judge Sobeloff in Erlanger Mills, Inc. v. Cohoes Fibre Mills, 239 F.2d 502, 509 (4th Cir. 1956).

Moreover, to allow jurisdiction under these circumstances would extend an open invitation to Massachusetts residents to bring personal injury actions in the District Court of New Hampshire whenever the Massachusetts two-year statute of limitations has barred action in the courts of the Commonwealth. The continuing and mainly successful assault on the requirement of privity in warranty actions and the increasing acceptance of the doctrine of strict liability in cases against manufacturers of products sold and advertised on a nation-wide basis makes this a very real consideration for this Court.

The Court has been unable to find, and counsel have failed to cite, any cases where a federal district court has taken jurisdiction under these, or similar, facts. It should be noted that the plaintiff has (or had until the statute of limitations barred her) the choice of three forums in which to proceed: (1) the State Courts of the Commonwealth of Massachusetts; (2) the Federal District Court for the District of Massachusetts; and, (3) the Federal District Court for the District of Michigan in which the defendant is incorporated.

■ The federal law which controls this Court's decision derives primarily from the line of cases supporting the expanded reach of permissive state court jurisdiction, beginning with International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and culminating in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223 (1957). Those cases unquestionably established that a state might well, consistent with due process, exercise *in personam* jurisdiction over a foreign corporation by the use of a "long-arm" statute, though the corporation's contacts within the forum state are minimal, *provided,* that the defendant corporation's activities show sufficient "contact" with the state so that it is reasonable to require the corporation to answer suit there. See Caso v. Lafayette Radio Electronics Corp., 370 F.2d 707 (1st Cir. 1966). But:

> While the trend [expanding the reach of permissive state court jurisdiction] is surely discernible, the Supreme Court has clearly indicated that in this area there still exists due process boundaries which cannot be trespassed. [Citing Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)]. Waltham Precision Instrument Co. v. McDonnell Aircraft Corp., 310 F.2d 20, 23 (1st Cir. 1962).

Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), expresses the contemporary, controlling, and refined rule that there must be at least a minimal amount of local interest in an action before a state may, consistent with due process, require a foreign corporate defendant to appear in its courts.

> [I]t is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. [Citation omitted.] Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They

are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him. 357 U.S. at 251, 78 S.Ct. at 1238.

Immediately thereafter, the *Hanson* Court distinguished McGee v. International Life Ins. Co., on the grounds that the cause of action in *Hanson* did not arise out of an act done or transaction consummated in the forum state. 357 U.S. at 251, 78 S.Ct. 1228. In that paragraph, the Court continued to speak in terms of "substantial connection" between an actionable case and the forum state, and a forum state's "manifest interest" in protecting its own citizens. 357 U.S. at 252, 78 S.Ct. 1228. New Hampshire has no interest, manifest or otherwise, in this case.

The Court's order of dismissal is not at odds with the law as postulated by the First Circuit Court of Appeals. The plaintiff relies upon Volkswagen Interamericana, S. A. v. Rohlsen, 360 F.2d 437 (1st Cir. 1966), and Garcia Pujol v. United States Life Ins. Co., 396 F.2d 430 (1st Cir. 1968), as support for her claim of jurisdiction in this court. These cases are the most recent First Circuit authority on the question of any requirement of connection between the events giving rise to the cause of action and the plaintiff's chosen forum. The Circuit Court holds clearly in both cases that suit may be maintained though it concern a transaction having no connection with the forum, when a foreign defendant's contacts with the forum are substantial. 360 F.2d at 440; 396 F.2d at 432. In each case, however, the plaintiff was a resident of the forum, and the Court explicitly stated in *Volkswagen* that "the suit is not unrelated to [the forum] * * *." 360 F.2d at 441. These are cases, therefore, where jurisdiction has been asserted over a foreign corporation because of its relationship with a *local* person or corporation. In both cases the territory of Puerto Rico had a real and manifest interest in the litigation.

The Fifth, Sixth, Eighth, and Ninth Circuits have recently been confronted with a similar problem of "long-arm" due process definition.[9] To the extent that those Circuits postulate a rule requiring that the allegedly wrongful act of the defendant take place within the forum, they must be and are summarily rejected because they are in direct conflict with *Volkswagen* and *Garcia Pujol*. To the extent that they require a connection between the fundamental act which gives rise to the alleged cause of action and the forum state, they are irrelevant. The order on the instant motion is based on a due process requirement that the forum have a legitimate *interest* in the action.

The decision in Curtis Publishing Co. v. Birdsong, 360 F.2d 344 (5th Cir. 1966), contains an apposite and carefully cited statement of its definition of due process requirements in this context:

> There must be a rational nexus between the fundamental events giving rise to the cause of action and the forum State which gives that State sufficient interest in the litigation before it may constitutionally compel litigants to defend in a foreign forum. This seems to be what the Supreme Court meant when it spoke of the "relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." [Citing International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945).] 360 F.2d 344, 346–347.

The Ninth Circuit due process requirements are perhaps best set forth in Taylor v. Portland Paramount Corp., 383 F.2d 634 (9th Cir. 1967):

> The first requirement [of due process in a state's exercise of jurisdiction under its "long-arm" statute] is that

---

9. See Note 7, supra.

the nonresident defendant must do some act or consummate some transaction within the forum. \* \* \* [Citation omitted.] The second requirement is that the claim must arise out of or result from the defendant's activities within the forum. The third requirement, which assumes that the first two are met, is that the assumption of jurisdiction must be consonant with the due process tenets of fair play and substantial justice. 383 F.2d at 641.

The cited Circuits derive their primary authority from the *Hanson* case.[10] In this respect, our rulings are similar. This does not mean, however, that this Court adopts *in toto* the view of those Circuits: this ruling is limited to the facts of the instant case. In essence, I feel that the Court is compelled to rule jurisdiction lacking by reason of due process limitations, when, as here, a state's power of extra-territorial jurisdiction is purportedly exercised on behalf of a non-resident plaintiff, against a foreign corporation, when the state has absolutely no interest whatsoever in the litigation, despite the fact that the foreign corporation's "contacts" with the forum state might well suffice as a basis for the valid exercise of extra-territorial jurisdiction under other fact situations.

In view of the fact that this order of dismissal is based upon an admittedly perplexing question of jurisdiction, I feel it is imperative to note that even if the jurisdictional issue were resolved favorably to the plaintiff, this Court would feel constrained to consider the propriety of venue, an issue unnecessary for decision now but intimately related to the type of problem that has here been raised. It is my present view that dismissal or, *de minimus* transfer, would be incumbent upon this Court if venue required consideration at this time.

Finally, and alternatively, given the existence of jurisdiction and the propriety of venue *arguendo,* I would like to point out that this Court would probably apply the Massachusetts statutes of limitations which would also result in a dismissal. This choice of laws would appear to be required by the New Hampshire decision of Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1966), which is destined to become a landmark case in the field of conflict of laws.

The motion to dismiss is granted by reason of lack of jurisdiction in this court.

10. See, e. g., Southern Machine Co. v. Mohasco Industries, Inc., supra, Note 7 at 380–381 of 401 F.2d.