**Ronald N. TIMBERLAKE, Plaintiff,**

v.

**James C. SUMMERS, Defendant.**

**No. CIV–76–0235–E.**

United States District Court,
W. D. Oklahoma.

April 27, 1976.

Eddie Y. Newcombe, Lawton, Okl., for plaintiff.

A. B. Neil, Jr., Neil, Wehby & Dozier, Nashville, Tenn., and William B. Rogers, Oklahoma City, Okl., for defendant.

MEMORANDUM OPINION AND ORDER

EUBANKS, District Judge.

Plaintiff, a citizen of the State of Oklahoma, alleges he was libeled and defamed by defendant, a citizen of the State of Tennessee, in a letter written by defendant to plaintiff's commanding officer at Fort Sill, Oklahoma.

Defendant moves for dismissal for improper service and want of jurisdiction over his person, on the ground that no provision

of the long arm statute, 12 O.S. § 187, is available to this plaintiff. The court agrees that § 187 is inapplicable. It is undisputed that defendant has had no contact with Oklahoma other than the writing and mailing of a single letter addressed to a resident of this state.

However, the court must further determine whether jurisdiction is authorized under the long arm statute, 12 O.S. § 1701.03, specifically subsection (a)(3), providing for exercise of personal jurisdiction over one who has caused tortious injury in this state by an act or omission in this state.[1]

Plaintiff argues that jurisdiction is authorized thereunder, but goes no further than to state that tortious injury has resulted here. The question to be resolved, however, is whether the writing and mailing of an allegedly defamatory letter in the State of Tennessee constitutes "an act or omission in this state."

There is no Oklahoma authority on point.[2] However, the United States District Court for the Western District of Virginia has had occasion in a similar case to interpret a provision of the Virginia long arm statute identical to the one in issue. *St. Clair v. Righter,* 250 F.Supp. 148 (1966). The court concluded that while the tortious injury occurred upon the publication of the alleged libel within Virginia, the injury was caused by the act of writing and mailing the letters outside Virginia, and accordingly the

acts alleged in the complaint were not sufficient to bring the defendants under the terms of the long arm statute. That court reasoned:

"It will be noted that Virginia has included two separate paragraphs, (3) and (4), which deal with jurisdiction predicated on a potentially tortious injury which occurs within the State . . .. This sets the Virginia statute apart from the so-called 'single-act' long-arm statutes (notably those of Illinois and New York) which state simply that in personam jurisdiction may be asserted over a person who commits a 'tortious act' within the state. . . . Paragraph (4) is considerably more restrictive than paragraph (3), the former requiring that the defendant engage in some persistent course of conduct or derive substantial revenue from goods used or consumed or services rendered within the State for jurisdiction to attach. Therefore, in interpreting the Virginia statute we must attempt to ascertain the legislative purpose behind the inclusion of the two tortious injury paragraphs.

"The significant difference between Virginia's statute and the 'single-act' statutes is that the General Assembly saw fit to separate the causal act from the resulting injury. In legislation which bases jurisdiction simply on a 'tortious act' committed within the state, it is obvious that the act and injury must coincide,

---

1. "(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action or claim for relief arising from the person's:

(1) transacting any business in this state;

(2) contracting to supply services or things in this state;

(3) causing tortious injury in this state by an act or omission in this state;

(4) causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(5) having an interest in, using, or possessing real property in this state; or

(6) contracting to insure any person, property, or risk located within this state at the time of contracting; or

(7) maintaining any other relation to this state or to persons or property including support for minor children who are residents of this state which affords a basis for the exercise of personal jurisdiction by this state consistently with the Constitution of the United States.

"(b) When jurisdiction is based solely upon this section, the defendant's appearance does not authorize the exercise of personal jurisdiction except *as to a cause of action or claim for relief arising in the circumstances enumerated in this section."*

2. Cases involving consideration of telephone calls and letters as minimum contacts are to be distinguished. See, e. g., *Gregory v. Grove,* 547 P.2d 381 (Okl.1976). The question here is not what may properly be assessed as contacts but where the act complained of occurred.

as an act cannot be tortious in the absence of injury. Virginia, on the other hand, refers both to the 'act or omission' and the 'tortious injury' resulting therefrom. In both paragraphs the tortious injury occurs within Virginia, but in paragraph (3) the causal act also occurs within the State while in paragraph (4) it occurs outside the State, a fact which, in the minds of the legislators, necessitated the restrictive language appended to the latter paragraph.

\* \* \* \* \* \*

" . . . The language must be interpreted with relation to the statute as a whole, and if the court were to hold that plaintiff could use paragraph (3) to obtain jurisdiction (a holding that the act occurred in Virginia), the necessity for paragraph (4) would be completely obviated, as every set of facts which give rise to tortious injury could be brought within the terms of paragraph (3). We would in effect be assimilating the Virginia statute to the single-act statutes of other states. . . . Under such an interpretation the act and the injury would coincide and thus render the act a tortious one. It is believed that the legislature purposely omitted the adjective 'tortious' when referring to the act or omission and included it with reference to the resulting injury in order to make certain that a single-act interpretation would be precluded." At 150–151.

In this case too, the court could find jurisdiction established only by ignoring the distinction which the Oklahoma statute makes between tortious injury resulting from an act within the state and tortious injury resulting from an act outside the state, and the clear restriction of the latter provision to one who engages in a persistent course of conduct or derives substantial revenue from goods used or services rendered in this state.

The *St. Clair* court proceeded nonetheless to deny defendants' motion to dismiss on the ground that the exercise of jurisdiction would be consonant with due process.

■ The Oklahoma Supreme Court has frequently said that the state's long arm statutes are intended to reach to the outer limits of due process. However, this principle has never been enunciated in a decision rendered in disregard of statutory reach. See, e. g., *Carmack v. Chemical Bank New York Trust Co.*, 536 P.2d 897 (Okl.1975) (1701.03[a], subsections 1, 2, 4 and 7); *Fidelity Bank, N. A. v. Standard Industries, Inc.*, 515 P.2d 219 (Okl.1973) (subsections 1, 2 and 7); *Vemco Plating, Inc. v. Denver Fire Clay Co.*, 496 P.2d 117 (Okl.1972) (subsections 2 and 7); *Hines v. Clendenning*, 465 P.2d 460 (Okl.1970) (subsection 7).

In cases in which that court has concluded jurisdiction could not be exercised, the court has based its decision upon statutory grounds. See, e. g., *Roberts v. Jack Richards Aircraft Co.*, 536 P.2d 353 (Okl.1975); *Precision Polymers, Inc. v. Nelson*, 512 P.2d 811 (Okl.1973). In those cases the court held that inasmuch as the acts out of which the claims arose were not the same acts as those alleged to confer jurisdiction, jurisdiction could not be exercised, and the court so held without consideration of whether exercise of jurisdiction in the absence of a nexus between the claim and the contacts would nevertheless be constitutionally permissible. See *George v. Strick Corp.*, 496 F.2d 10 (10th Cir. 1974). " . . . § 1701.03 authorizes in personam jurisdiction to the outer limits of due process *when and only when the asserted cause of action arises from the defendant's activities within the state."* At 13. (Emphasis added.)

■ Accordingly, this court declines to follow the *St. Clair* example.[3] The proper analysis should be: 1) is the exercise of jurisdiction authorized by the statute, and 2) if so, is the exercise of such jurisdiction consonant with constitutional due process?

---

**3.** Other courts have found the *St. Clair* analysis "misconceived." See the *Margoles* opinion quoted below wherein *St. Clair* is impliedly rejected, and the explicit critique in *Beaty v. M.*

*S. Steel Co.*, 401 F.2d 157, 160–161 (4th Cir. 1968), cert. denied, 393 U.S. 1049, 89 S.Ct. 686, 21 L.Ed.2d 691 (1969).

If the answer to the first part of the question is no, the second part should not be reached. To ask if the court may exercise jurisdiction though not authorized by statute, and to answer affirmatively, is to write a law for the state that the legislature itself did not see fit to write.

This is the analysis which has recently been adopted by the Court of Appeals for the District of Columbia in a case analogous to the one at bar. *Margoles v. Johns,* 157 U.S.App.D.C. 209, 483 F.2d 1212 (1973). That court said:

> "When considering the applicability of any long-arm statute to a particular fact situation courts invariably engage in a two prong analysis. It is necessary initially to determine whether the statute by its language would permit service of process on a nonresident defendant, and secondly whether service under the statute would nonetheless contravene the due process clause of the federal constitution. . . . It is axiomatic, however, that the due process clause is utilized as a limit upon a state's power and not as a mandate for the exercise of that power. . . . 'Thus, it is clear that at least where the legislature has acted, even though the statute may not go to the limits of due process, the courts of a state may not go further and assert jurisdiction over persons not embraced within that legislation.' . . . Since we have found that the long-arm statute currently in effect in the District of Columbia does not by its terms afford section (a)(3) personal jurisdiction over the appellees, we need not decide the hypothetical question of whether if it did such an assertion of jurisdiction would be constitutional." At 1220.

▓▓▓ The court concludes that § 1701.-03(a)(3) authorizes in personam jurisdiction to the outer limits of due process when and only when the act or omission causing tortious injury occurs in this state. Thus, the Oklahoma long arm statute does not by its terms afford section (a)(3) personal jurisdiction over this defendant, and, accordingly,

IT IS ORDERED, that defendant's motion to dismiss be and the same hereby is granted.