# CIRCUIT COURT OF FAIRFAX COUNTY

Joaquin Gonzalez

v.

Diana Stout,
Amanda Stout,
and Cara Stout

November 22, 2010

Case No. (Law) 2010-2022

BY JUDGE R. TERRENCE NEY

This matter came before the Court on November 12, 2010. After considering the pleadings, memoranda, and arguments of counsel, the Court took the matter under advisement. The following embodies the Court's ruling.

## Facts

On February 17, 2010, Plaintiff, Joaquin Gonzalez filed his eight-count Complaint against three Defendants: Diana Stout ("Diana"), Amanda Stout, and Cara Stout (Amanda and Cara, collectively, the "Daughters"). On April 28, 2010, Diana Stout filed a Suggestion of Bankruptcy with this Court. This Opinion Letter pertains only to Cara and Amanda Stout.

The Complaint alleges that Gonzalez is a Virginia resident living in Fairfax County. Amanda Stout is a Maryland resident, and Cara Stout is a South Carolina resident. Amanda and Cara Stout are Diana Stout's daughters.

Gonzalez asserts that he and Diana lived together in his home in Fairfax, Virginia. He also alleges that Diana, for her own benefit and the

benefit of her children, misappropriated and converted assets from his bank account in excess of $1,000,000.00.

The Complaint alleges that the Daughters were fully aware of Diana's theft. Diana allegedly used much of the money to pay for the Daughters' tuition. She also allegedly used the money to help Cara Stout purchase a home in Charleston, South Carolina.

There are three counts which are applicable to the Daughters.

Count I is for Conversion; Financial Assets. Gonzalez asserts that the Daughters were aware of Diana's thefts and took the money given to them. Count II is for Common Law Conspiracy. It is asserted that the Daughters were aware of the theft and actively kept this information from Gonzalez. Count III is for Fraud.

On June 17, 2010, counsel for Gonzalez attempted service through the Secretary of the Commonwealth on the Daughters. After this service attempt, no responsive pleading was filed by either of the Daughters within twenty-one days.

On September 3, 2010, a Default Judgment was entered against the Daughters. This Order was not final. The Order states that the matter is continued until a later date for *ex parte* proof of damages.

The Daughters filed the present Demurrer asserting that the Default Judgment was void for lack of personal jurisdiction. The only issue before the Court is whether an allegation of a civil conspiracy is enough to establish *in personam* jurisdiction.

*Analysis*

A. *Standard on Demurrer*

"A demurrer tests the legal sufficiency of a pleading and can be sustained if the pleading, considered in the light more favorable to the plaintiff, fails to state a valid cause of action." *Kitchen v. City of Newport News*, 275 Va. 378, 385-86, 657 S.E.2d 132, 136 (2008) (citing *Welding, Inc. v. Bland County Serv. Auth.*, 261 Va. 218, 226, 541 S.E.2d 909, 914 (2001)). The sole question to be decided by the court is whether the facts pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against the Defendant. *Thompson v. Skate America, Inc.*, 261 Va. 121, 540 S.E.2d 123 (2001). On demurrer, the court must admit the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the alleged facts. *Cox Cable Hampton Roads, Inc. v. City of Norfolk*, 242 Va. 394, 410 S.E.2d 652 (1991). A demurrer does not admit the correctness of any conclusions of law. *Ward's Equip., Inc. v. New Holland North Am., Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997).

## B. *In Personam Jurisdiction*

"The first step in analyzing the exercise of personal jurisdiction is to determine whether Virginia's long-arm statute reaches the non-resident defendant given the cause of action alleged and the nature of the defendant's Virginia contacts." *DeSantis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 422-23 (E.D. Va. 1996) (citations omitted).

The second step is to ensure that the exercise of *in personam* jurisdiction over a non-resident defendant complies with the "due process requirements of the Fourteenth Amendment to the United States Constitution." *Witt v. Reynolds Metals Co.*, 240 Va. 452, 454, 397 S.E.2d 873, 875 (1990).

Although there are two steps, "because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause . . . the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (quotations omitted). "The question, then, is whether the defendant has sufficient minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 261 (quoting *International Shoe Co.*, 326 U.S. 310, 316 (1945)).

For a defendant to be subject to suit in a forum where it is not physically present, due process demands certain "minimum contacts" with the forum "as make it reasonable . . . to require the [defendant] to defend the particular suit which is brought there." *International Shoe Co. v. Washington*, 326 U.S. 310, 316-17, 66 S. Ct. 154, 90 L. Ed. 95 (1945). Ordinarily these contacts should be "continuous and systematic," as opposed to "casual . . . single or isolated." *Id.* at 317. This requirement springs from the essential principle "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958).

It is axiomatic that a judgment rendered by a court that lacked *in personam* jurisdiction over a defendant is void. *O'Connell v. Bean*, 263 Va. 176, 179-80, 556 S.E.2d 741, 742 (2002).

## C. *There Is No Personal Jurisdiction over the Daughters Because There Are Insufficient Minimum Contacts Alleged*

Here, the only allegations of contact between the Daughters and the Commonwealth of Virginia are an alleged civil conspiracy. Gonzalez asserts that the mere knowledge and receipt of the fruits of the theft are sufficient to establish minimum contacts.

A defendant is protected by due process against being bound *in personam* by judgments of a forum with which it lacks meaningful relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

"The significant contacts considered are those *actually generated by the defendant.*" *Choon Young Chung v. NANA Development Corp.*, 783 F.2d 1124, 1126-27 (4th Cir. 1986) (emphasis added). It is firmly established that "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). But where contacts are of an "isolated" nature, the "reasonable foreseeability of litigation in the forum is substantially diminished." *Burger King*, 471 U.S. at 472. The same can be said about the acts committed by the Daughters. The only meaningful links are their alleged knowledge of a theft and the receipt of funds from this crime. These cannot be sufficient for *in personam* jurisdiction.

In a minimum contacts analysis, a court looks to the nature of the defendant's contacts with the forum, particularly the quantity and quality of those contacts. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Factors relevant to "fair play and substantial justice" include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

Gonzalez asserts in his Complaint that the Daughters were aware that Diana was illegally converting funds from his bank account to hers. He states that the Daughters withheld this information from him. Moreover, he contends that they received some of these monies.

There is no allegation, though, that the Daughters came to Virginia to conspire with Diana. There is no allegation that letters were sent or telephone calls made from the Daughters to Diana in Virginia. There is no allegation that the Daughters were actually *ever* in Virginia. It is well settled that this factor alone would be insufficient to assert a lack of personal jurisdiction. As the Supreme Court explained in *Burger King*, "[j]urisdiction . . . may not be avoided merely because the defendant did not physically enter the forum State . . . we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (citations omitted). There is no allegation that there were any contacts ever generated by the Daughters in Virginia.

The Fairfax County Circuit Court in *Massey Energy Co. v. UMW* stated that "[o]nce [a] *prima facie* showing of conspiracy is adequately alleged, and where 'co-conspirators have sufficient contacts with the forum, so that due process would not be violated,' these contacts are imputed against the foreign co-conspirator." 69 Va. Cir. 118 (Fairfax County 2005), citing *Siu Ming Hong v. Chum Moon Tong*, 61 Va. Cir. 439, 441 (Winchester 2003) (quoting *Verizon Online Services v. Ralsky*, 203 F. Supp. 2d 601, 622 (E.D. Va. 2002)).

Although the Daughters here are allegedly foreign co-conspirators, neither has sufficient contacts with the forum.

The burden on the Daughters to defend in Virginia would be substantial. One daughter lives in Maryland and the other in South Carolina. Virginia's interest in adjudicating this issue is plainly tangential considering that all of the actionable conduct, namely, the knowledge of this theft and the receipt of the funds, occurred elsewhere. Moreover, though it may be more efficient to try both Daughters at one time in Virginia, the quality and nature of their activities are not such that it is "reasonable" and "fair" to require them to conduct their defense here.

The law of *in personam* jurisdiction is sufficiently clear as to these allegations. The facts asserted here do not establish sufficient minimum contacts to show that the Daughters purposefully availed themselves of the laws and protections of the Commonwealth of Virginia.

## Conclusion

Gonzalez has failed to establish the minimum contacts required for personal jurisdiction over the Daughters. Because permitting the default judgment to stand would be a violation of the Daughters' Fourteenth Amendment Due Process rights, the Default Judgment entered on September 3, 2010, is vacated, and the Demurrer is sustained with leave to amend.