# CIRCUIT COURT OF FAIRFAX COUNTY

Noah Nathan

    v.

Takeda Pharmaceuticals
America, Inc., et al.

August 2, 2011

Case No. CL-2010-2064

BY JUDGE JONATHAN C. THACHER

    Noah Nathan has brought this civil action against his employer, Takeda Pharmaceuticals ("Takeda") and several of its current and former employees. Specifically, Plaintiff alleges defamation, breach of contract, common law conspiracy, and negligent supervision and retention of employees against Takeda and defamation, tortious interference and common law conspiracy against the current and former employees. Four of these employees, Michael Venanzi, Louis Savant, John Flood, and Cassandra Smith are nonresidents and appeared specially to dismiss this action against them for lack of personal jurisdiction. Subsequent to this motion's being filed, Mr. Venanzi was personally served in the Commonwealth. Mr. Venanzi thereafter withdrew his petition for lack of jurisdiction and entered a

general appearance. Thus, the remainder of this opinion will not address Mr. Venanzi because he has submitted to the jurisdiction of this Court. *See Nixon v. Rowland*, 192 Va. 47, 50, 63 S.E.2d 757, 759 (1951) (a general appearance in a case confers jurisdiction of the person on the court). The issue presented is whether this Court has the authority to exercise personal jurisdiction over these employees.

*Background*

A motion to dismiss for failure to properly allege personal jurisdiction "tests the legal sufficiency of facts alleged in the pleading, not the strength of proof." *Cabaniss v. Cabaniss*, 46 Va. App. 595, 595-600, 620 S.E.2d 559 (2005). Therefore, for the purposes of this motion, the court must accept all facts alleged by Plaintiff and any reasonable inferences flowing from those facts as true. *See id.* at 600; *Massey Energy Co. v. United Mine Workers*, 69 Va. Cir. 118, 121 (Fairfax County 2005) (Bellows, J.). Accordingly, the facts alleged by Plaintiff in the Amended Complaint are as follows.

Takeda hired Plaintiff in 2002 as a sales representative. In 2004, Plaintiff was promoted to Specialty Sales Representative. This position required Plaintiff to travel to multiple locations in his designated sales territory and meet with healthcare professionals to inform them about pharmaceutical products Takeda manufactured. Plaintiff's entire territory was located in Virginia. Prior to the events alleged in the Amended Complaint, Plaintiff was a highly successful sales representative and received multiple performance awards from Takeda.

In 2007, Defendant Michael Fouchie, a Virginia resident, became District Manager of Plaintiff's territory and Plaintiff's immediate supervisor. Starting in November 2008 and continuing through April 2009, Plaintiff and Fouchie developed a strained working relationship based on a dispute regarding Plaintiff's habit of periodically dropping his child off at school. Takeda's standard practice allows its sales representatives flexibility in determining their daily schedule. Fouchie, however, was adamant that Plaintiff should be "in the field" earlier and questioned why his wife could not assume responsibility for transporting the child. Plaintiff complained to Defendant Cassandra Smith, a Regional Human Resources Manager located in Illinois and a resident of that state, regarding Fouchie's harassment.

In February 2009, Plaintiff attended a national meeting where he was certified to promote Takeda's new drugs Uloric and Kapidex. After returning from that meeting, Fouchie's immediate superior, Defendant Louis Savant, the Regional Sales Manager based out of Pennsylvania and a citizen of that state, directed Fouchie to recertify Plaintiff on Uloric. Plaintiff passed this recertification on February 12, 2009. Savant contacted Plaintiff by telephone several times regarding the recertification and his

previous complaints against Fouchie. Savant also informed Plaintiff that he would personally accompany Plaintiff on a ride along to observe him while making his sales rounds. Plaintiff's job entailed visiting hospitals and physicians' offices throughout his territory to promote drugs that Takeda manufactured. A ride along is an administrative practice where a manager accompanies a subordinate during his scheduled visits to observe and evaluate his performance.

On March 4, 2009, Savant accompanied Plaintiff for the ride along. During this time and on a telephone conference two days later, Savant made false accusations criticizing Plaintiff's performance. Savant memorialized these false criticisms in a coaching letter Savant later sent to Plaintiff. He also informed Plaintiff he would need recertification on both Uloric and Kapidex.

On March 9, 2009, Plaintiff met with Fouchie for his recertification on Uloric and Kapidex. Fouchie spent most of the meeting on the phone with Savant and concluded the meeting by refusing to recertify Plaintiff on both drugs. Plaintiff was thereafter told he would need to travel to Chicago the next day for additional training.

On March 10, 2009, Plaintiff traveled to Chicago and met with Defendant John Flood, a training manager and resident of Illinois. Flood had previously worked directly for Savant. During the recertification training, Flood issued confusing and contradictory instructions and used a different certification form than had been previously used. Flood ultimately recertified Plaintiff on Uloric but not Kapidex. Plaintiff claims that Savant contacted Flood and instructed him to prevent Plaintiff from being recertified. Flood produced an evaluation report from this meeting, which contained false and defamatory information. This evaluation was sent via e-mail to Plaintiff, Savant, Fouchie, and Smith, among others.

Following the training session in Chicago, Fouchie accompanied Plaintiff on his sales rounds. On March 19, 2009, Fouchie sent a report to Plaintiff falsely claiming Plaintiff acted unprofessionally towards the doctors and medical staff and failed to accurately convey information about the drugs he was promoting. Later that day, Plaintiff received a call from Savant, who informed him that he must travel to New Jersey on March 23, 2009, to recertify on Uloric, and, if he failed to successfully recertify, his employment would be terminated. Savant also informed Plaintiff that Fouchie would present him with a "Warning Letter" the following day outlining these false facts.

Following the conversation with Savant, Plaintiff contacted Smith regarding Fouchie's report and the upcoming March 23, 2009, recertification. Smith failed to assist him and instead repeated and supported the other Defendants' defamatory statements.

Given Smith would not help Plaintiff and after Smith failed to answer numerous calls, Plaintiff submitted a written request by e-mail that the

recertification be conducted by a third party who had no knowledge of the prior events. Plaintiff "CC'ed" two Takeda attorneys on this request. Smith thereafter contacted Plaintiff and assured him his request would be granted. She also scolded him for contacting the company attorneys.

On March 23, 2009, Plaintiff traveled to New Jersey for recertification. Plaintiff contends that the events of that day are further proof of a conspiracy to discredit him in his profession. Although Smith had assured Plaintiff that a third party would be present and an unbiased manager would administer the test, a third party was not present during the recertification test. Moreover, the regional manager administering the test came out of Savant's office just prior to conducting the test. Nevertheless, Plaintiff passed this recertification.

On March 25, 2009, Plaintiff spoke with Smith for approximately two hours regarding his concerns about the recertification in New Jersey and the recertification in Illinois conducted by Flood. He also detailed the harassment by Fouchie and Savant. Approximately six weeks later, Smith contacted Plaintiff and informed him she had concluded her investigation and found no wrongdoing. Plaintiff alleges Smith's investigation was an effort to cover up the inappropriate actions of her co-conspirators.

In May 2009, Smith informed Plaintiff that Takeda would not reimburse him $4,300 in tuition expenses for the semester he completed in April 2009. Smith stated that, since Plaintiff had received a warning letter from his managers, he was ineligible for this company benefit. Plaintiff was denied another tuition reimbursement for the semester ending in July 2009, resulting in another $4,300 loss.

In June 2009, Plaintiff's attorney contacted Takeda's legal department to complain about his treatment, and Plaintiff was subsequently transferred from Fouchie's district to another district manager, Defendant Michael Venanzi. Although Plaintiff had previously worked directly under Venanzi and the two had a positive working relationship, Venanzi now continued Fouchie and Savant's campaign of harassment. Specifically, Venanzi submitted false field reports concerning Plaintiff's knowledge of Takeda products and a performance evaluation that did not accurately reflect his work.

On August 9, 2009, Plaintiff received his annual performance evaluation from Venanzi. Plaintiff received extremely low marks on this evaluation despite receiving a high company ranking in sales volume during the relevant period. The evaluation comments detailing deficiencies in his performance were also false. Plaintiff's current manager, Noelle Breuker expressed genuine surprise at the content of the evaluation, indicating this was not her experience with Plaintiff and offering to assist Plaintiff if he wished to contest the contents of the evaluation.

Plaintiff thereafter filed the instant suit against, among others, Savant, Smith, and Flood. Plaintiff's claims relating to these particular Defendants

are defamation, tortious interference with contract, and conspiracy. Savant, Smith, and Flood have now challenged this Court's authority to exercise personal jurisdiction over them.

## Analysis

The question of personal jurisdiction is "one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for personal jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). To prevail, "a plaintiff need only make a *prima facie* showing of sufficient jurisdictional basis." *Rannoch, Inc. v. Rannoch Corp.*, 52 F. Supp. 2d 681, 684 (E.D. Va. 1999); *see Massey*, 69 Va. Cir. at 121. However, there must be a factual basis for the showing, as "conclusory pleading does not satisfy the requirements to exercise personal jurisdiction under the long-arm statute." *Eastern Direct Mktg. v. The Coolidge Co.*, 26 Va. Cir. 282, 283 (Arlington County 1992) (Winston, J.).

The determination of whether personal jurisdiction exists over a nonresident defendant is a two-step inquiry. *Bergaust v. Flaherty*, 57 Va. App. 423, 436, 703 S.E.2d 248 (2011). First, the court must determine whether Virginia's long-arm statute reaches the nonresident defendant. *Id.* Second, it must ensure that the exercise of personal jurisdiction over the nonresident comports with the Due Process clause of the Fourteenth Amendment. *Id.* Each of these steps is separately discussed below.

## Virginia's Long-Arm Statute

Virginia's long-arm statute provides the bounds of this Court's jurisdiction to hear cases involving nonresident defendants. Va. Code Ann. § 8.01-328.1 (2011). The statute enumerates ten categories of "contacts" which confer jurisdiction on a nonresident. In this case, Plaintiff specifically alleges jurisdiction over Savant, Smith, and Flood based on sections (A)(1)-(4), which read:

> A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
> 1. Transacting any business in this Commonwealth;
> 2. Contracting to supply services or things in this Commonwealth;
> 3. Causing tortious injury by an act or omission in this Commonwealth;
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course

of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

Va. Code Ann. § 8.01-328.1(A) (2011).

The Virginia Supreme Court has interpreted this to be a "single act" statute "requiring only one transaction in Virginia to confer jurisdiction on its courts." *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971); *see McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957) (holding that a long-arm statute conferring jurisdiction over an out of state defendant based on a single contract is consistent with the Due Process clause). Moreover, it is firmly established that Virginia's long-arm statute asserts jurisdiction to the extent permissible under the Due Process clause. *See John G. Kolbe, Inc.*, 211 Va. at 740, 180 S.E.2d at 667; *Gonzalez v. Stout*, 81 Va. Cir. 376, 378 (Fairfax County 2010) (Ney, J.).

## Due Process Clause

The Due Process clause of the Fourteenth Amendment limits the power of a state to exercise personal jurisdiction over a nonresident. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 413-14, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). A state may exercise personal jurisdiction only if doing so would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (citations omitted). The Due Process clause is not offended when a nonresident has certain "minimum contacts" with the forum state and the cause of action arises out of those contacts. *Id.* Unilateral activity by a person related to the defendant is not enough. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). Rather, the defendant must have "purposefully availed" himself of the laws of the forum state such that he could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).

Plaintiff alleges that jurisdiction is valid against Savant, Smith, and Flood under Virginia Long-Arm Statute sections (A)(1)-(4) and that due process is not offended by exercising personal jurisdiction over them. Because this Court must find personal jurisdiction for all parties to a suit, the analysis below will apply the two-prong test towards each of these Defendants.

## Defendant Savant

Plaintiff alleges personal jurisdiction exists as to Savant under Va. Code § 8.01-328.1(A)(1). Plaintiff argues that Savant's actions as Regional Sales

Manager, including sending e-mails, placing and receiving phone calls to Plaintiff and other subordinates in Virginia, and visiting Virginia once to conduct a ride along, constitutes "transacting business" in Virginia within the meaning of the statute.

While no case has specifically addressed the precise facts arising in this case, the fundamental principles of the law are well settled. The Virginia Supreme Court has stated that the "manifest purpose" of section (A)(1) of the Virginia long-arm statute is "to assert jurisdiction over non-residents who engage in some purposeful activity in [Virginia] to the extent possible under the due process clause." *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 761 F. Supp. 423, 426 (E.D. Va. 1991) (quoting *John G. Kolbe, Inc.*, 211 Va. at 740, 180 S.E.2d at 667). The requirement of purposeful activity in Virginia serves the purpose of ensuring that the constitutional requirements of due process are met, namely, that the defendants have certain minimum contacts with the forum state which show their purposeful availment of the privilege of conducting activities within Virginia.

Furthermore, (A)(1) has been interpreted as a single act provision. *See English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990). Thus, a single instance of transacting business may be sufficient to satisfy the long-arm statute. *See id.; Roanoke Cement Co. v. Chesapeake Prods., Inc.*, 2:07cv97, 2007 U.S. Dist. LEXIS 50935, at *15 (E.D. Va. July 13, 2007) (finding nonresident employees of a corporation were subject to personal jurisdiction under (A)(1) for cause of action arising out of single agreement they personally negotiated on behalf of the corporation).

Savant's position as Regional Sales Manager included responsibility over Fouchie, the district manager located in Virginia, along with multiple sales territories in Virginia. Savant routinely directed Fouchie, a Virginia resident, through e-mails and phone calls with regards to action taken towards Plaintiff. Moreover, Savant communicated directly with Plaintiff in Virginia on several occasions. More importantly, on at least one occasion, Savant traveled to Virginia to conduct a ride along with Plaintiff. The purpose of the ride along was to observe Plaintiff on-site, and, during the ride along, Savant was physically present in Virginia. Afterwards, Savant detailed his observations in a report, which he sent to Plaintiff in Virginia. Savant followed this written report with phone calls to Plaintiff discussing the ride along. Based upon these actions, we hold that Savant was transacting business in Virginia within the meaning of section (A)(1).

As to the second prong of the analysis, whether the exercise of personal jurisdiction over Savant comports with the Due Process clause, because section (A)(1) has been construed to extend to the limits of the Due Process clause, contacts sufficient under the long-arm statute necessarily satisfy due process as well. *See Indus. Carbon v. Equity Auto & Equip. Leasing Corp.*, 737 F. Supp. 925 (E.D. Va. 1990), *appeal dismissed*, 922 F.2d 835 (noting

the real limitation on personal jurisdiction under the "transacting business" provision is the Due Process clause of the Fourteenth Amendment). Accordingly, the Court finds that exercising jurisdiction over Savant based on the contacts listed above does not offend the Due Process clause.

While the Court is satisfied that Savant transacted business in Virginia sufficient to confer jurisdiction, in order to comport with section (A)(1), Plaintiff's cause of action must also arise from those business contacts. *See City of Va. Beach v. Roanoke River Basin Ass'n*, 776 F.2d 484, 487 (4th Cir. 1985) (the statute confers no jurisdiction for the assertion of claims that do not arise from the defendant's acts in the state). The question thus becomes whether Plaintiff's allegations of defamation, tortious interference, and conspiracy towards Savant arise out of his business contacts with the state.

While personal jurisdiction is limited to causes of action "arising from" the business transactions in the forum state, courts have broadly construed this provision to include acts related to, but not directly the cause of, the alleged claims. *See Production Group Int'l v. Goldman*, 337 F. Supp. 2d 788, 794 (E.D. Va. 2004) (finding any contract performance activity in the forum state relevant for personal jurisdiction analysis under (A)(1) even if not directly related to the alleged breach); *Chedid v. Boardwalk Regency Corp.*, 756 F. Supp. 941, 943 (E.D. Va. 1991) (interpreting "arising from" as requiring "a causal link between the acts relied on for personal jurisdiction and the cause of action asserted").

In the instant case, Plaintiff alleges Savant defamed him through his ride along report. The report was directly based on events taking place in Virginia and with which Savant was personally involved. Savant wrote the report as Plaintiff's supervisor, and this defamatory report was one instance in a series of attempts by Savant and his co-conspirators to create a false paper trail to harm Plaintiff's business interests in Virginia. The Court finds that Plaintiff's claim for defamation sufficiently arises from Savant's contacts with Virginia to satisfy section (A)(1).

Savant, however, contends that all his actions relevant to the Complaint were performed on behalf of Takeda in his role as an agent and officer of Takeda and thus cannot be used to establish personal jurisdiction over him personally. Specifically, Savant maintains that, when a nonresident officer commits a tort outside of the forum state, his contacts with the forum state through his employer are not applicable to the jurisdictional analysis.

Although Savant argues otherwise, it appears that a defendant who commits a tort may not use his employer as a protective shield against the reach of the law. The United States Court of Appeals for the Fourth Circuit addressed this issue in *Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052 (4th Cir. 1983). In *Columbia Briargate*, the plaintiff alleged that, in the course of negotiating the sale of real estate, the foreign corporation's vice-president, a nonresident individual, made a number of false and fraudulent representations about the conditions of the property. 713 F.2d

at 1054. All of the alleged misconduct of the defendant vice-president occurred in the forum state. Despite the defendant vice-president's assertion that he had "acted solely in a representative capacity on behalf of [the foreign corporation] in all his contacts with [the forum state]" and that, under those circumstances, "the assertion of jurisdiction of [his] person would be contrary to the Fourteenth Amendment," the Fourth Circuit found that there was no question of the amenability of the defendant to the jurisdiction of the forum state. *Id.* at 1065. The Fourth Circuit held that a nonresident individual who commits a tort within the forum state is subject to suit in that state *regardless* of whether he was acting in his "corporate or personal role." *Id.; see also Korean Video Broadcasting Corp. v. D & H Visual Art*, No. 94-2556, 1995 U.S. App. LEXIS 25902, at *6 (4th Cir. Sept. 13, 1995) (because Virginia's long-arm statute extends to the limits of due process, the acts of a corporate officer or employee taken in his corporate capacity within Virginia can form the predicate for jurisdiction over him in his individual capacity); *Direct Connect v. Medra Systems, L.L.C.*, 80 Va. Cir. 637 (Fairfax County 2010) (Thacher, J.) (holding that an employee who commits fraud while negotiating a contract in Virginia on behalf of his company is subject to personal jurisdiction in Virginia).

This Court more recently addressed this issue in *Cordova v. Alper*, 64 Va. Cir. 87 (Fairfax County 2004) (Klein, J.). In *Cordova*, the plaintiff sued a corporation for negligently misdiagnosing pap smears and returning a negative test for cervical cancer when the patient did in fact have cancer. 64 Va. Cir. at 89-90. The plaintiff asked this court to find personal jurisdiction over a nonresident employee of the corporation solely on the basis that the corporation was subject to jurisdiction in Virginia. *Id.* at 112-13. We rejected the idea of imputing a corporation's actions to its employees, affirming the distinction between a corporation and its agents. *Id.* at 109-14. The employee's susceptibility towards personal jurisdiction could only be based on his contacts with this state as an individual, which include those made in his capacity as an employee. *Id.*

Similarly, the United States Supreme Court has recognized that an employee's acts on behalf of an employer can establish personal jurisdiction over the employee. In *Calder v. Jones*, the Supreme Court found jurisdiction over a Florida writer and editor who produced an article defaming a famous actress in California. 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). The defendants argued that, because the article was written on behalf of their employer, a nationally circulated magazine, and because they had no other connection with California, the state could not exercise personal jurisdiction over them. The Court rejected this argument explaining:

> Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, *their status as employees does not*

> *somehow insulate them from jurisdiction. Each defendant's*
> *contacts with the forum State must be assessed individually.*

*Id.* (emphasis added).

Savant further argues that any connection he may have had with the torts alleged by Plaintiff occurred without Virginia, and thus, under *Columbia Briargate*, the assertion of jurisdiction over his person is contrary to the Fourteenth Amendment. This argument specifically relies on the following language contained in *Columbia Briargate*:

> [I]f the claim against the corporate agent *rests on nothing more than that he is an officer or employee of the non-resident corporation and* if *any connection he had with the commission of the tort occurred without the forum state*, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally by reason of service under the long-arm statute of the forum state.

*Columbia Briargate*, 713 F.2d at 1064-65 (emphasis added).

The Court finds this argument meritless. Plaintiff's assertion of jurisdiction over Savant does not rest solely on his status as an officer of Takeda. Instead, the facts indicate that Savant had significant contacts with Virginia during the commission of the torts alleged. Savant personally visited Virginia in the course of his business, and he committed torts related to his contact with Virginia, which were specifically aimed at a Virginia resident. Accordingly, the Court is satisfied that the nexus between Savant and the Commonwealth of Virginia is sufficient to support personal jurisdiction over him.

Here, Savant's connection to Virginia is not based solely on the fact that he works for a corporation subject to jurisdiction in Virginia. Savant has actual contacts with Virginia. He personally made frequent e-mails and telephone calls to Virginia and directed subordinates located in Virginia. He personally visited Virginia in the course of his business. Moreover, he committed torts specifically aimed at a Virginia resident that are related to his contact with Virginia. In short, the Court finds that Savant's individual contacts with Virginia are sufficient to subject him to the power of this Court.

Although the Court has found jurisdiction under Va. Code § 8.01-328.1(A)(1), the Court is also satisfied that Savant is subject to personal jurisdiction pursuant to Va. Code § 8.01-328.1(A)(3) and (A)(4). Under the conspiracy theory of personal jurisdiction, discussed *supra*, Savant has committed a tort in Virginia which allows jurisdiction under (A)(3). Moreover, Savant's additional contacts with Virginia amount to regularly

doing business in Virginia, subjecting him to personal jurisdiction in the Commonwealth pursuant to (A)(4). *See Robinson v. Egnor*, 699 F. Supp. 1207, 1212 (E.D. Va. 1988) (holding it is "unmistakably clear" that a manager whose work required travel to Virginia on two occasions and regular contact with subordinates in Virginia is subject to personal jurisdiction under (A)(4)).

### Defendants Flood and Smith

Flood and Smith are both nonresidents who are not alleged to have been present in Virginia at any time relevant to this suit. Moreover, each has similar contacts with Virginia. Therefore, the court will jointly discuss Flood and Smith and whether this Court has personal jurisdiction over either.

### Va. Code § 8.01-328.1(A)(1) and (A)(2)

Plaintiff claims that Flood and Smith are both subject to personal jurisdiction pursuant to Va. Code § 8.01-328.1(A)(1) and (A)(2). Plaintiff, however, has failed to allege sufficient facts to establish that either Flood or Smith transacted business in Virginia. Flood sent a few e-mails to Fouchie, who lived in Virginia. Smith e-mailed both Fouchie and Plaintiff and, on a number of occasions, called Plaintiff in Virginia. However, the law is well settled that mere e-mails and telephone calls directed at Virginia do not amount to transacting business in Virginia. *See, e.g., Superfos Invest., Ltd. v. Firstmiss Fertilizer, Inc.*, 774 F. Supp. 393, 397-98 (E.D. Va. 1991); *Unidyne Corp. v. Aerolineas Argentinas*, 590 F. Supp. 391, 396 (E.D. Va. 1984) (telephone calls, telex messages, and letters are an insufficient basis for *in personam* jurisdiction); *Williams Crane & Rigging, Inc. v. B & L Systems, Ltd.*, 466 F. Supp. 956, 957 (E.D. Va. 1979) (holding that a single phone call and letter to forum did not warrant personal jurisdiction). Additionally, Plaintiff's conclusory allegation that Flood and Smith "transacted business in Virginia" is insufficient to establish jurisdiction. *See Eastern Direct*, 26 Va. Cir. at 283 ("conclusory pleading does not satisfy the requirements to exercise personal jurisdiction").

Moreover, Plaintiff failed to allege that Flood or Smith entered into a contract to supply services or things in Virginia, as is required under Va. Code § 8.01-328.1(A)(2). Accordingly, there is no basis for jurisdiction over Flood or Smith under Va. Code § 8.01-328.1(A)(1) or (A)(2).

### Va. Code § 8.01-328.1(A)(3)

Plaintiff next contends that personal jurisdiction exists against Flood and Smith under Va. Code § 8.01-328.1(A)(3). In order to find jurisdiction

under this section, Plaintiff must allege a tortious injury in Virginia and that one essential act of the alleged tort occurred in Virginia. *See Bochan v. La Fontaine*, 68 F. Supp. 2d 692 (E.D. Va. 1999).

At this stage, it appears Plaintiff has alleged defamation and tortious interference[1] against Flood. In Virginia, defamation consists of the following elements: (1) a publication; (2) of defamatory statements; (3) with the requisite intent. *Chapin v. Greve*, 787 F. Supp. 557, 561-62 (E.D. Va. 1992). Plaintiff claims Flood purposely and maliciously issued him a failing score on the March 10, 2009, recertification test in Chicago and that Flood knowingly wrote a false report regarding this recertification. Flood then e-mailed this report to, among others, Fouchie in Virginia. Under Virginia law, publication occurs where the e-mail is read. *See Bochan*, 68 F. Supp. 2d at 698-99. Moreover, Flood, as Manager of Specialty Sale Training, knew the importance of certification and was surely aware that a failed certification would negatively impact Plaintiff's prospects at Takeda. In fact, the March 20, 2009, warning letter given to Plaintiff precluded him from receiving company benefits in the form of tuition reimbursements, thus, clearly injuring Plaintiff in Virginia. The warning letter cited, in part, Plaintiff's failed recertification in Chicago as the basis for the reprimand.

Plaintiff has also alleged a claim of defamation against Smith. Smith repeated the defamatory remarks made by Flood over the phone and through e-mail messages to Plaintiff and others. Moreover, Smith reiterated these statements knowing them to be false. Finally, Smith failed to adequately investigate the complaint made by Plaintiff and used her own report as a means of covering up her colleagues' wrongdoing.

Since Plaintiff has alleged tortious injury in Virginia, the question thus becomes whether a person outside of Virginia who sends a defamatory e-mail or telephone call to a person living in Virginia is an act "within the Commonwealth" as required under Va. Code § 8.01-328.1(A)(3).

Although the Virginia Supreme Court has not addressed this specific issue, courts interpreting this subsection have held that, when a nonresident writes a defamatory letter outside the forum state and mails it into the forum, he does not commit a "tortious act" within the forum as required. *St. Clair v. Righter*, 250 F. Supp. 148, 151 (W.D. Va. 1966), *disapproved on other grounds, Beaty v. M.S. Steel Co.*, 401 F.2d 157 (4th Cir. 1968); *Loria v. Regelson*, 38 Va. Cir. 283, 287 (1995). Similarly, defamatory remarks made by a nonresident over the telephone to a person receiving the call in

---

[1] In Virginia, tortious interference consists of the following elements: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing the breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Century-21 v. Elder*, 239 Va. 637, 641, 391 S.E.2d 296, 298 (1990).

Virginia are generated outside the forum and, thus, not an act within the state. *Bochan*, 68 F. Supp. 2d at 700, n. 26.

In *St. Claire v. Righter*, the United States District Court for the Western District of Virginia found that a defamatory letter sent to Virginia from outside the state did not establish personal jurisdiction over the defendant under Va. Code § 8.01-328.1(A)(3). 250 F. Supp. at 151. The court reasoned that, while the tortious injury occurred in Virginia, the harm was "caused by the act of writing and mailing the letters outside of Virginia." *Id.* A contrary holding, the court argued, would render Va. Code § 8.01-328.1(A)(4) "completely obviated, as every set of facts which give rise to tortious injury could be brought within the terms of paragraph (3)." *Id.*

The notion that the "tortious act" occurs where a defamatory message is written and communicated has been reaffirmed during the internet age. In *Bochan v. La Fontaine*, the United States District Court of the Eastern District of Virginia addressed the issue of whether defamatory remarks posted on the internet constitute a tortious act in Virginia under Va. Code § 8.01-328.1(A)(3). 68 F. Supp. 2d at 694-703. In *Bochan*, Texas and New Mexico residents separately posted defamatory remarks about a Virginia resident on an internet newsgroup. *Id.* at 695. The court held that Virginia's long-arm statute did not grant jurisdiction over the New Mexico resident under (A)(3). *Id.* at 700. The court rejected plaintiff's argument that the tortious act occurred in Virginia because the defamatory remarks were published there. *Id.* at 700, n. 26. However, the court found that the defamatory remarks posted by the Texas resident did constitute a tortious act within Virginia under (A)(3). *Id.* at 699. The Texas resident, unlike the New Mexican, posted his remarks over a server physically located in Virginia and, therefore, was deemed to have sent the communication in Virginia. Thus, although the defamation was written outside of the state, the act of communicating it through a server physically located in Virginia constituted an act in Virginia. *Id.*

Under this analysis, neither Flood nor Smith committed acts within Virginia. Both wrote their defamatory e-mails in Illinois and sent the e-mails to Virginia from Illinois. Plaintiff does not allege, nor does the record support, that the e-mails were sent through a service provider present in Virginia. Smith also made defamatory calls to Virginia. But the analysis is identical to that used for written communications, and it compels the same conclusion. Moreover, neither Defendant completed any other acts in Virginia. Thus, the Court finds that there is insufficient factual basis to establish personal jurisdiction over Flood or Smith pursuant to Va. Code § 8.01-328.1(A)(3).

*Va. Code § 8.01-328.1(A)(4)*

Plaintiff next contends that personal jurisdiction is established over Flood and Smith pursuant to Va. Code § 8.01-328.1(A)(4). The United

States District Court for the Eastern District of Virginia has found this section requires a two-pronged analysis, explaining:

> First, a court must determine whether the defendant caused tortious injury in Virginia by an act or omission outside this Commonwealth. Second, the court must evaluate whether "a relationship between the defendant and the state which exists in any one of the three ways specified in subsection (4)." A court must therefore inquire into whether the defendant (1) regularly does or solicits business, (2) engages in any other persistent course of conduct, or (3) derives substantial revenue from goods used or consumed or services rendered in the Commonwealth of Virginia.

*Roanoke Cement Co., L.L.C. v. Chesapeake Prods., Inc.*, 2:07cv97, 2007 U.S. Dist. LEXIS 50935, at *23-24 (E.D. Va. July 13, 2007) (citations omitted).

Plaintiff has clearly shown facts that satisfy the first part of (A)(4), an act or omission outside Virginia causing tortious injury in this state. Plaintiff has alleged that both Smith and Flood sent defamatory statements into Virginia. Since e-mailing a defamatory statement is an act outside the Commonwealth when it is not communicated over a server located in Virginia, as is the case here, *see First Am. First, Inc. v. National Assoc. of Bank Women*, 802 F.2d 1511, 1516-16 (4th Cir. 1986) (holding a letter written and mailed outside Virginia is a sufficient act outside the Commonwealth under (A)(4)), the issue presented is whether Flood and Smith satisfy the second requirement of (A)(4).

The second requirement of (A)(4) necessitates persistent contacts with the forum state, substantial revenue from the forum state, or regular business in the forum state. *See, e.g., First Am. First, Inc.*, 802 F.2d at 1514-16. Moreover, unlike the "transacting business" nexus required under Va. Code § 8.01-328.1(A)(1), section (A)(4) does not require the "contacts with Virginia be related to the cause of action alleged." *Robinson v. Egnor*, 699 F. Supp. 1207, 1212 (E.D. Va. 1988). The jurisdictional significance of the contacts outlined under (A)(4) is not merely the number of contacts but the "continuing or ongoing nature of these contacts." *Id.* at 1213.

It is clear that neither Flood nor Smith derived substantial revenue from goods used or consumed or services rendered in Virginia. Indeed, Plaintiff has failed to allege any facts indicating these types of contacts. Thus, the only remaining inquiry is whether Flood or Smith engaged in any persistent course of conduct in Virginia or regularly conducted business in Virginia to satisfy the second requirement of (A)(4).

The case *Robinson v. Egnor*, is instructive. 699 F. Supp. 1207. In *Robinson*, a Virginia resident sued a Colorado resident for defamation.

699 F. Supp. at 1210-11. The defamatory telephone call occurred outside of Virginia, but the Plaintiff sought jurisdiction under (A)(4) because the harm had occurred in Virginia and the defendant had contacts with Virginia through his employment. The court found that, during his nineteen-month tenure in the Marshal Service, the defendant had twice traveled to Virginia on business, contacted the Marshal Service Headquarters in Virginia at least fifty times, sent letters and spoke on the phone with various divisions in Virginia, as well as regularly worked with Headquarters on various financial matters. The court held that these contacts represented a "persistent course of conduct" under (A)(4), reasoning that his management responsibilities "require[d] that he communicate with Headquarters [in Virginia] on a regular basis." *Id.* at 1212.

On the other end of the spectrum, the court in *Micropicture Int'l, Inc. v. Kickartz*, found a persistent course of conduct lacking based on seven e-mails and one letter sent to Virginia. 3:05-cv-00034, 2006 U.S. Dist. LEXIS 3714, at *8-10 (W.D. Va. Jan. 17, 2006). Specifically, the court noted that five e-mails sent in July of 2007 and two in December of 2007 was "a frequency more sporadic than persistent or ongoing." *Id.*

From these cases, it is clear that Flood's contacts do not constitute "doing business" or a "persistent course of conduct" under (A)(4). Unlike the defendant in *Robinson*, there is no allegation that Flood traveled to Virginia or contacted Virginia regularly in the course of his employment. Flood's contacts with Virginia stem solely from the recertification episode in Chicago and amount, at most, to a few e-mails sent to Fouchie in Virginia around the time of the recertification. Thus, we find it impossible to characterize Flood's contacts as persistent, continuous, or ongoing.

Smith's contacts necessitate the same conclusion. Her contacts with Virginia were also limited to the short time frame of the events surrounding Plaintiff's complaint. While Smith made several more phone calls to Virginia than Flood, the number does not rise to the level of persistent, continuous, or ongoing contact with Virginia.

Accordingly, the Court finds that there is no jurisdictional basis against Smith or Flood under Va. Code § 8.01328.1(A)(4).

### Conspiracy Theory of Jurisdiction

Although the Court has concluded that personal jurisdiction is not permitted over defendants Flood and Smith based on each defendant's individual contacts with the forum state, there exists another basis for jurisdiction. Courts have recently recognized that personal jurisdiction may, in some circumstances, be based upon the acts or contacts of a co-conspirator. *See Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601 (E.D. Va. 2002). Although the Virginia Supreme Court has not addressed this specific issue, several other courts interpreting Virginia law have

recognized the validity of this basis for jurisdiction. *See, e.g., Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 538-40 (E.D. Va. 2009); *Massey*, 69 Va. Cir. at 124.

Courts acknowledging the conspiracy theory of jurisdiction seem to recognize that a defendant who joins a conspiracy knowing that acts in furtherance of the conspiracy have taken or will take place in the forum state is subject to personal jurisdiction in that forum because the defendant has purposefully availed himself of the privileges of that state and should reasonably expect to be haled into court there. *Noble Sec., Inc.*, 611 F. Supp. 2d at 539. A co-conspirator is subject to personal jurisdiction in a forum where "co-conspirators have sufficient contacts with the forum, so that due process would not be violated." *Verizon*, 203 F. Supp. 2d at 622; *see also, Massey*, 69 Va. Cir. at 124. Due process is not offended so long as the co-conspirator knew, or should have known, that acts in furtherance of the conspiracy would be committed in the forum. *Noble Sec., Inc.*, 611 F. Supp. 2d at 539. A co-conspirator could "reasonably expec[t] to be haled into court where their [conspiratorial acts] inflicted the greatest harm." *Verizon*, 203 F. Supp. 2d at 622. Moreover, a state maintains a " 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Id.* at 617 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

In the instant case, Plaintiff has alleged a conspiracy between Flood, Smith, Venanzi, Savant, and Fouchie. Accordingly, under the conspiracy theory of jurisdiction, Flood and Smith could be subject to jurisdiction based on the acts of Venanzi, Savant, or Fouchie that occurred in Virginia in furtherance of the conspiracy. The underlying torts of Plaintiff's conspiracy claim are defamation and tortious interference. Thus, if Savant, Venanzi, or Fouchie committed acts in furtherance of these torts in Virginia, jurisdiction could lie against Flood or Smith as co-conspirators.

Plaintiff has sufficiently alleged that acts in furtherance of both torts occurred in Virginia. Fouchie's March 19, 2009, report detailing Plaintiff's performance contained false and defamatory statements. Fouchie composed these reports in Virginia and published them to other members of the conspiracy as well as other employees outside of Virginia. This Court has already determined that under Virginia law the act of defamation occurs where the statement was written and communicated. Plaintiff also alleges these reports were made in furtherance of a conspiracy to create a documented history of false underperformance in order to harm Plaintiff's reputation and career prospects at Takeda. Smith and Flood knew or should have known that these acts would be committed in Virginia. Moreover, the record is clear that the remaining co-conspirators also committed acts in Virginia in furtherance of the conspiracy that Smith and Flood knew or should have known about. Thus, the Court is satisfied that the alleged

conduct by the co-conspirators in Virginia is sufficient to establish personal jurisdiction over Flood and Smith.

Furthermore, the Court finds it does not offend due process to impute these acts to Flood and Smith. Fouchie and the other co-conspirators had significant contacts with Virginia, and the alleged conspiracy was aimed at a Virginia resident. A co-conspirator could "reasonably expec[t] to be haled into court where their [conspiratorial acts] inflicted the greatest harm." *Verizon*, 203 F. Supp. 2d at 622.

Smith and Flood, however, contend that Plaintiff has not alleged sufficient facts to establish a conspiracy, and thus jurisdiction should not be asserted on this theory. Smith and Flood are incorrect. To properly assert a conspiracy claim, the plaintiff must "make a threshold showing . . . that a conspiracy existed and that the defendants participated therein." *St. Paul Fire & Marine Ins. Co. v. Hoskins*, 5:10cv00087, 2011 U.S. Dist. LEXIS 53321, at *9 (W.D. Va. May 18, 2011) (quoting *McLaughlin v. McPhail*, 707 F.2d 800, 807 (4th Cir. 1983)). Plaintiff has produced facts to support his assertion of a conspiracy that, at this stage of the proceedings, must be taken as true. *Cabaniss*, 46 Va. App. at 600. For example, prior to the recertification test in Chicago, Flood worked directly for Savant, a key player in the conspiracy. Flood was in contact with Savant just prior to administering the recertification test, which Plaintiff subsequently failed. Smith, on the other hand, received Plaintiff's complaints and was privy to his belief that Fouchie, Savant, and others were conspiring against him. Smith's responsibilities included investigating the allegation. Instead, she ignored Plaintiff's claims and failed to investigate the allegation beyond contacting other members of the conspiracy. These facts, when taken with the other allegations, convince this Court that Plaintiff has met his preliminary burden. Moreover, Judge Kassabian recently decided at the May 6, 2011, hearing that Plaintiff has asserted sufficient facts to allege a conspiracy. The Court agrees with Judge Kassabian's decision and analysis.

Finally, Smith and Flood maintain that Plaintiff has failed to allege a conspiracy due to the intra-corporate immunity doctrine. The intra-corporate immunity doctrine holds that employees of a corporation cannot be found to conspire with one another when they are acting within the scope of their employment because they are considered one entity, the corporation. *E.g., Fox v. Deese*, 234 Va. 412, 428, 362 S.E.2d 699, 708 (1987). Employees acting outside the scope of their employment, however, can be liable for a civil conspiracy claim. *E.g., Meeko Corp. v. Chesterfield Commerce Ctr.*, 14 Va. Cir. 149, 152-53 (Chesterfield County 1988) (Gill, J.). According to Smith and Flood, Plaintiff has failed to assert any facts to support his allegation that the individual Defendants acted outside the scope of their employment.

Smith and Flood are incorrect that Plaintiff has not alleged facts to support the contention that Defendants acted outside the scope of their employment.

Plaintiff alleges Defendants acted maliciously in an attempt to harm him and remove him from Takeda. In furtherance of this objective, Defendants created false reports and performance reviews regarding Plaintiff, refusing to recertify him on drugs he had previously been certified, and failed to investigate substantial grievances. Plaintiff has made an adequate showing that Defendants acted outside the scope of their employment. At this stage of the trial, the Court is not required, nor allowed, to test the sufficiency of proof concerning scope, which can only be determined after an evidentiary hearing. *Fox*, 234 Va. at 428, 362 S.E.2d at 708.

## Conclusion

For the reasons set forth above, the Court finds that it has authority to exercise personal jurisdiction over Defendants Savant, Flood, and Smith. Accordingly, Defendants' motion is denied.